## 20129

STATE of South Carolina ex rel. Daniel R. McLEOD, Attorney General, Plaintiff, v. The COURT OF PROBATE OF COLLETON COUNTY, South Carolina, et al., Defendants, and 24 related cases.*

(223 S. E. (2d) 166)

---

* In which the following were Defendants: Civil and Criminal Court of Spartanburg County; County Court of Charleston County; Municipal Court of City of North Charleston; Family Court of Georgetown County; Family Court of Cherokee County; County Court of Union County; County Court of Marlboro County; James W. Sparks; Civil and Criminal Court of Pickens County; Dan M. McEachin; Family Court of Allendale, Barnwell, and Bamberg District; Family Court of Horry County; Fields (Richard E.); Civil and Criminal Court of Oconee County; Klyde Robinson; Harold R. Boulware; Court of Probate of Chesterfield County; Daisy P. Porter; Court of Probate of Georgetown County; James P. Harrelson; Court of Probate of Horry County; Court of Probate of Union County; Civil and Criminal Court of Beaufort County; Civil and Criminal Court of Darlington.

282

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. C. Tolbert Goolsby, Jr.,* and *Asst. Atty. Gen. Karen L. Henderson,* Columbia, *for plaintiff.*

*Joseph H. Earle, Jr.,* Greenville, *Felix L. Finley, Jr.,* Pickens, *Peter D. Hyman,* Florence, *John P. Henry,* Conway, *W. Jerry Fedder,* Seneca, *Arnold S. Goldstein* and *James E. Gonzales,* North Charleston, *Henry Hammer,* Columbia, *William R. Byars, Jr.,* Camden, *W. G. Lynn, Jr.,* Aiken, *Jonathan Z. McKown,* Gaffney, *Berry & Dukes,* St. George, *Sylvan L. Rosen,* Georgetown, *William H. Seals,* Marion, *Roy McBee Smith,* Spartanburg, *Ney B. Steele,* Chesterfield, *Joel J. McKellar,* Ridgeland, *George Warren, Jr.,* Hampton, *D. Kenneth Baker,* Darlington, *Theodore D. Stoney* and *G. M. Howe, Jr.,* Charleston, *Jackson V. Gregory,* Walterboro, *Bruce W. White* and *Betty B. Greer,* Union, *Thomas H. Pope,* Newberry, *Ladson F. Howell,* Beaufort, *John M. Mills,* Bennettsville, *R. W. Kemp,* Bamberg, *Daisy P. Porter,* of Saluda, and *Claudia W. Howard,* of Georgetown, *for defendants.*

*Robert McC. Figg* and *David W. Robinson,* Columbia, *amicus curiae.*

*G. Dan Bowling* and *Edmund H. Robinson,* Charleston, *for intervenors.*

*James G. Bogle, Jr.,* Columbia, *amicus curiae.*

*Harry F. Smithson,* Greenville, *for Associate Judge of Family Court of Greenville.*

December 10, 1975.

Supplemental Opinion February 10, 1976.

*Per Curiam:*

Pursuant to the order of this Court, dated September 3, 1975, these 25 actions were brought in the original jurisdiction of this Court by the State of South Carolina on the relation of its Attorney General, Daniel R. McLeod, against the defendants named in each of the several complaints. The State brings the actions pursuant to the Uniform Declaratory Judgments Act, § 10-2001 *et seq.,* Code of Laws of South Carolina (1962). At issue is the constitutionality of twenty-nine (29) statutes relating to courts, enacted by the General Assembly of South Carolina after April 4, 1973, which was the effective date of new Article V, the Judicial Section of our Constitution.

There is also in issue the right of certain individuals to continue to hold judicial offices which were created after April 4, 1973. If this Court determines that the statutes under which they came to hold office are unconstitutional, the Attorney General seeks to oust these individuals pursuant to § 10-2251 of the Code.

Inasmuch as the actions alleged in the several complaints involve either the same question or similar questions, all actions were argued together, as if in a single action. We rule upon all herein.

Upon being served with the complaints, some of the defendants defaulted, some opposed the relief sought, some admitted the unconstitutionality of particular statutes, and some submitted their rights to the court, asking for a

clarification of their authority. Some defendants filed briefs; others have not.

Prior to April 4, 1973, old Article V of the Constitution of 1895 provided for the judicial department of the state government. Section 1 read in part as follows:

"Judicial power vested in certain courts.—The Judicial power of this State shall be vested in a Supreme Court, in two Circuit Courts, to wit: A Court of Common Pleas having civil jurisdiction and a Court of General Sessions with criminal jurisdiction only. The General Assembly may also establish County Courts, Municipal Courts and such Courts in any or all of the Counties of this State inferior to Circuit Courts as may be deemed necessary . . . ."

Pursuant to this provision, the General Assembly over the years created several county courts, several municipal courts, and many other courts inferior to the circuit courts. There came into being a hodgepodge of courts, lacking in uniformity and consistency. Each court had such jurisdiction as the General Assembly, influenced by the local legislative delegation, assigned to it.

In 1972, the Senate and House of Representatives proposed a new constitutional judicial section, which we now refer to as new Article V. In November 1972, the people approved the amendment, and the ensuing General Assembly ratified the same on April 4, 1973.

Section 1 of new Article V provides as follows:

"Judicial power vested in certain courts.—The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law."

Section 22 provides:

"Existing courts continued.—Notwithstanding the provisions of this Article, any existing court may be continued

as authorized by law until this Article is implemented pursuant to such schedule as may hereafter be adopted."

On March 28, 1973, in contemplation of the ratification of the amendment, the General Assembly approved an Act, No. 503, with title as follows: "An Act To Continue All Courts In Existence In This State Prior To The Ratification Of Article V Of The Constitution Of South Carolina, 1895." It provided as follows:

"Be it enacted by the General Assembly of the State of South Carolina:

"Section 1.Courts to continue in existence.—All courts in existence in this State on the effective date of the ratification of Article V of the State Constitution, as presented to the qualified electors under the provisions of Joint Resolution 1629 of 1972, shall continue in existence, with all the powers and duties vested in them prior to such ratification, until such time as the schedule, provided for in Section 22 of Article V, has been implemented."

Section 22, quoted above, was obviously an effort on the part of the people to provide for an orderly transition of the old court system to a new unified court system. A unified judicial system has not yet been provided. In lieu thereof, there have been enacted the many statutes now in contest.

Already, the construction of new Article V has been before us in three cases. Reference is made to each of these cases for a full understanding of our ruling herein.

This Court held in *Cort Industries Corp. v. Swirl, Inc.,* 264 S. C. 142, 213 S. E. (2d) 445 (1975), that an act which attempted to change the jurisdiction of a court in existence on April 4, 1973, was unconstitutional because inconsistent with new Article V.

We held in *State ex rel. McLeod v. Knight,* S. C., 216 S. E. (2d) 190 (1975), that a statute establishing a family court for Dorchester County was unconstitutional because violative of new Article V.

This Court ruled in *State ex rel. McLeod v. The Civil and Criminal Court of Horry County,* S C., 217 S. E. (2d) 23 (1975), that a statute which created an additional associate judgship for the Civil and Criminal Court of Horry County (already existing on April 4, 1973) was unconstitutional as violative of new Article V.

These rulings placed in question the validity of the many statutes which the Attorney General now asks this Court to rule upon.

Although some of the actions are not contested, and although briefs have not been filed in all the cases, we have considered each complaint as though it were in contest, because of the importance of the statutes to persons not named as defendants.

The actions may be classified in four groups: first, those which contest statutes that undertook to change the jurisdiction of the court involved.

Act No. 143, effective April 6, 1973, altered the powers of the judges of the Civil and Criminal Court of Spartanburg County relative to the issuance of warrants and the setting of bonds.

Act No. 179, effective April 27, 1973, increased the civil jurisdiction of the County Court of Charleston County from twelve thousand dollars to twenty-five thousand dollars.

Act No. 491 (§ 2), effective July 11, 1973, increased the civil jurisdiction of the County Court of Marlboro County from seventy-five hundred dollars to fifteen thousand dollars.

Act No. 939 (§§ 2, 11, 12 and 14), effective March 13, 1974, changed the term of the judge's office of the Pickens Civil and Criminal Court, increased its civil jurisdiction, altered criminal jurisdiction, and changed the civil jurisdiction relative to the transferring of cases.

Act No. 995, effective May 3, 1974, altered the jurisdiction of the Family Court of Horry County by empowering

the court to collect and disburse alimony money and support money previously collected by the clerk of court.

Act No. 1227 (§§ 2, 3, 4 and 5), effective August 12, 1974, increased the civil and criminal jurisdiction of the Civil and Criminal Court of Oconee County; it has also altered criminal procedures and changed civil and criminal jurisdiction by allowing actions pending in magistrate's and municipal courts to be transferred to the court, and altered powers of the court's judge by authorizing him to transfer cases within magistrate's jurisdiction to magistrate's court.

Act No. 20, effective February 24, 1975, altered the powers of the judge of the Court of Probate of Georgetown County by devolving upon him the duties of the Clerk of court relative to the issuance of marriage licenses.

■ Our reasoning in *Cort* is equally applicable to those statutes in group one referred to hereinabove. These courts are not, however, unconstitutional. They continue to exist with the same powers which each had on April 4, 1973, no more and no less. This is in keeping with new Article V, § 22, and is consistent with Act No. 503 of March 28, 1973, quoted hereinabove. The attempted alterations by the several statutes are simply invalid.

■ The second grouping involves statutes which attempted to create new local courts.

Act No. 237, effective May 19, 1973, created the Municipal Court of North Charleston, of which Casper H. Padgett, Sr. is the judge.

Act No. 247, effective May 31, 1973, created the Family Court of Georgetown County, of which John P. Hazzard, IV, is judge.

Act No. 977, effective April 18, 1974, created the Family Court of Allendale, Barnwell and Bamberg District, of which R. W. Kemp is judge.

Act No. 34, effective February 21, 1975, as amended by Act No. 235, effective June 9, 1975, created the Family

Court of the Hampton and Jasper District, the office of judge for which has not been filled.

, Act No. 488, effective July 11, 1973, created the Family Court of Union County, of which David N. Wilburn, Jr. serves as judge in addition to serving as Judge of the Civil and Criminal Court of Union, which was in existence prior to April 4, 1973.

The courts created by Acts No. 247 of 1973, No. 977 of 1974, and No. 34 of 1975, are, for all practical purposes identical to the Family Court of Dorchester County, declared unconstitutional in *State ex rel. McLeod v. Knight, supra.* Act No. 237 of 1973, creating the Municipal Court of North Charleston, is similarly objectionable and invalid. Act No. 488 of 1973, which attempted to create the Family Court of Union County is also invalid. However, the capacity of David N. Wilburn, Jr. to continue to serve as Judge of the Civil and Criminal Court of Union is not impaired. That court was in existence on April 4, 1973, and was continued by § 22 of new Article V and Act No. 503 of 1973.

The third group involves those statutes which created additional judgeships for courts already in existence on April 4, 1973.

Act No. 903 (§ 1), effective April 13, 1974, created an associate judgeship within the Family Court of Greenville County, which office is held by James W. Sparks.

Act No. 966, effective March 28, 1974, created an associate judgeship within the Civil and Criminal Court of Florence County, which office is held by Dan M. McEachin.

Act No. 1037, effective May 24, 1974, created an associate judgeship within the Family Court of Charleston County, which office is held by Richard E. Fields.

Act No. 1230 (§ 1), effective August 12, 1974, created an associate judgeship within the Family Court of Richland County, which office is held by Harold R. Boulware.

Act No. 11, effective February 12, 1975, created a deputy probate judgeship within the Court of Probate of Saluda County, which office is held by Daisy P. Porter.

Act No. 68, effective —— day of March, 1975, created a deputy probate judgeship within the Court of Probate of Union County, which office has not been filled.

Act No. 120, effective April 23, 1975, as amended by Act No. 211, effective June 4, 1975, created a judgeship within the Civil and Criminal Court of Beaufort County, which office has not been filled.

Each of these acts altered and extended the present judicial system by adding judges to courts in existence on April 4, 1973, in violation of new Article V, § 1, as held by this Court in *State ex rel. McLeod v. The Civil and Criminal Court of Horry County, supra,* and are invalid.

The fourth group relates to acts concerning several courts of probate, and an act concerning the master in equity for Cherokee County.

Act No. 1158, effective July 9, 1974, is a comprehensive statute relating to commitment, admission and discharge of persons from mental health facilities or hospitals. It prescribes procedures for determining fitness to stand trial. Section 8A provides for the appointment of associate probate judges or clerks for matters relating to mental illness and retardation. It alters the powers of the probate judge by authorizing him to request appointment of associate probate judges for matters of mental illness and retardation, and by authorizing him to assign other duties to associate probate judges, and created the office of associate probate judge for matters of mental illness and retardation. Pursuant to § 8A, the following have assumed offices of associate probate judge: Klyde Robinson in Charleston County, Joe A. Sanders in Richland County, Dorothy S. Wilson in Greenville County, Carl R. Reasonover (now resigned) and Thomas G. Cooper, Jr., in Kershaw County, Ruth Cato in Aiken

County, Lueva D. Marcoux in Cherokee County, Fred Zeigler in Dorchester County, Delia G. Stackhouse in Marion County, and Wallace Dickerson in Spartanburg County.

In addition to this general statute, No. 1158, several other statutes have dealt with the office of probate judge and/or the office of master in equity in several counties.

Act No. 136, effective April 6, 1973, altered the powers of the Judge of Probate of Colleton County by providing that if he is an attorney he shall also serve as master in equity *ex officio;* it also created the office of deputy probate judge and authorized the probate judge to appoint the deputy. Janeal W. Steltzer holds the office of deputy probate judge for Colleton County.

Act No. 973, effective April 18, 1974, altered the power of the Judge of Probate for Colleton County; it created the office of standing master. O. H. Rhodes holds that office.

Act No. 256, effective May 31, 1973, created the office of master in equity and altered the powers of the Judge of the Family Court of Cherokee County, by empowering him to act as master in equity. Harrison R. Swink, who was serving as family court judge prior to April 4, 1973, assumed the office of master in equity *ex officio*.

Act No. 1261, effective August 22, 1974, as amended by Act No. 40, effective March 17, 1975, altered the powers of the Judge of the Probate Court of Chesterfield County by authorizing him to appoint a deputy probate judge and created that office. The office has not been filled.

Act No. 63, effective March 17, 1975, altered the powers of the Judge of Probate of Horry County, by withdrawing his authority to appoint a clerk to perform certain duties; it also authorized the probate judge to appoint a deputy probate judge and created that office. Carolyn Wright occupies the office.

There can be no doubt but that the probate courts of this State come within the orbit of new Article V. Section 8 of that Article reads as follows:

"Jurisdiction in matters testamentary and of administration, minors and persons mentally incompetent.—Jurisdiction in matters testamentary and of administration, in matters appertaining to minors and to persons mentally incompetent, shall be vested as the General Assembly may provide, consistent with the provisions of Section 1 of this Article."

Section 8A of Act No. 1158 of 1974, reads in part as follows:

"The 1962 Code is amended by adding Section 15-405.1 which shall read as follows:

"Section 15-405.1. Appointment of Associate Probate Judges or Clerks.—For any county, upon request of the probate judge, the Governor may appoint one or more associate probate judges for matters relating to mental illness and retardation. . . ."

Counsel argues that this section is not inconsistent with the mandate of new Article V, § 1, since its provisions apply equally in every county and to every probate judge within the State. The argument is not without some appeal, but we think that a deputy probate judge is merely supplementary to the probate judge and/or the probate court, and since the probate courts have not been unified, the argument loses its force. Section 8A would extend the present non-unified court system by authorizing the addition of associate probate judges to existing probate courts, which are not a part of a unified court system mandated by new Article V. The statutes creating the office of deputy judges are clearly inconsistent with our ruling in *Cort, supra,* and *State ex rel. McLeod v. Civil and Criminal Court of Horry County, supra,* and are therefore invalid.

The other sections of Act No. 1158 of 1974 deal with the commitment, admission and discharge of persons from mental health facilities or hospitals and matters relating thereto, and consequently do not violate new Article V. Only § 8A of Act No. 1158 is contested.

That which we have said relative to § 8A of Act No. 1158, applies with equal force to Act No. 136 of 1973, Act No. 973 of 1974, Act No. 1261 of 1974 as amended by Act No. 40 of 1975, and Act No. 63 of 1975, all of which are declared to be invalid.

Act No. 256 of the 1973 Acts of the General Assembly, making the Judge of The Family Court of Cherokee County master *ex officio,* is unconstitutional because inconsistent with *State ex rel. McLeod v. Civil and Criminal Court of Horry County, supra,* and is invalid.

Over and above the cases discussed in the four groupings set forth hereinabove, a complaint has also been filed against the Civil and Criminal Court of Darlington County, alleging that Act No. 374 of 1975 is unconstitutional because violative of both new Article V, § 1 and Article III, § 34, subdivision IX, of the Constitution. Act No. 374 of 1975 provides as follows:

"SECTION 1. Notwithstanding the provisions of Section 61-103, Code of Laws of South Carolina, 1962, the Judge of the Civil and Criminal Court of Darlington County who is presently serving may serve an additional term beginning July 1, 1975 and expiring June 30, 1978."

Except for this statute Judge D. Carl Cook was required by § 61-103 of our Code to retire because of his age.

Article III, § 34 of our Constitution provides in part as follows:

"Special laws prohibited.—The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following pur-

poses . . . ix. In all other cases, where a general law can be made applicable, no special law shall be enacted. . . ."

At the beginning of arguments, counsel for the State moved to make D. Carl Cook a party to this action. The motion is granted. The argument of counsel for the Civil and Criminal Court of Darlington County fully presented all issues on the judge's behalf.

Patently, Act No. 374 was enacted for the benefit of the present judge of the court for the purpose of permitting him to avoid the mandatory retirement law. It is a special law where a general law could be made applicable, and is therefore invalid. We need not consider whether this act violates new Article V, § 1.

Having held that the acts cited herein-above are unconstitutional, we proceed to consider the complaints which allege that the holders of the offices created by the unconstitutional statutes should be removed from the offices and be barred from exercising the functions thereof.

Section 10-2256 reads as follows:

"Action against usurpers, for forfeiture of office or against persons acting as corporation.—An action may be brought by the Attorney General in the name of the State upon his own information or upon the complaint of any private party or by a private party interested on leave granted by a circuit judge against the parties offending in the following cases:

"(1) When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this State or any office in a corporation, created by the authority of this State; . . . ."

Inasmuch as the statutes under which these offices were created are unconstitutional, it necessarily follows that the holders of those offices should be enjoined from further exercise of the duties of the respective offices.

This Court is aware of the fact that the holders of the offices, created by the statutes now declared unconstitutional, have performed duties and exercised powers heretofore. Their actions include such things as granting of divorces, entering money judgments, sentencing defendants, adopting children, etc. It does not necessarily follow that their actions were void. At the beginning of oral arguments, the court announced that it was reserving for further ruling the effect of actions which have been taken by these judicial officers now enjoined. In due course, this Court will hear arguments on the validity of the acts which these office holders have performed, to the end that litigants affected may have their rights determined.

## BY WAY OF SUMMARY, IT IS THE RULING OF THIS COURT THAT:

1. Act No. 143 of the 1973 Acts of the General Assembly is hereby declared unconstitutional. Section 15-1671.2, which the Act attempted to amend, remains in effect.

2. Act No. 179 of the 1973 Acts of the General Assembly is hereby declared unconstitutional. Section 15 of Act No. 776 of 1962, as last amended by Act No. 433 of 1965, which the Act attempted to amend, remains in effect.

3. Section 2 of Act No. 491 of the 1973 Acts of the General Assembly is hereby declared unconstitutional. Section 1 of this Act is not contested and remains in effect.

4. Sections 11, 12 and 14 of Act No. 939 of the 1974 Acts of the General Assembly are unconstitutional insofar as they alter the jurisdiction of the Civil and Criminal Court of Pickens County. The remainder of the Act is not unconstitutional and remains effective; the court has the same jurisdiction it had on April 4, 1973. Section 2 is not inconsistent with new Article V, § 1 of the Constitution and is valid.

5. Act No. 995 of the 1974 Acts of the General Assembly is hereby declared unconstitutional. Section 10 of Act No. 165 of 1969, which it attempted to amend, remains effective.

6. Sections 2, 3, 4 and 5 of Act No. 1227 of the 1974 Acts of the General Assembly are hereby declared unconstitutional insofar as they attempt to alter the jurisdiction of the Civil and Criminal Court of Oconee County. The court continues with such jurisdiction as it had on April 4, 1973.

7. Act No. 20 of the 1975 Acts of the General Assembly is hereby declared unconstitutional.

8. Act No. 237 of the 1973 Acts of the General Assembly is hereby declared unconstitutional, and further exercise of the duties of the office of Judge of the Municipal Court of North Charleston by Casper H. Padgett is enjoined. The Recorders Court for the City of North Charleston, in existence on April 4, 1973, continues by reason of Section 22 of new Article V of the Constitution, and Act No. 503 of 1973.

9. Act No. 247 of the 1973 Acts of the General Assembly is hereby declared unconstitutional, and the further exercise of the duties of the office of Judge of the Family Court of Georgetown County and of the office of Master in Equity *ex officio* by John P. Hazzard, IV, is enjoined.

10. Act No. 977 of the 1974 Acts of the General Assembly is hereby declared unconstitutional and the further exercise of the duties of office of Judge of the Family Court of Allendale, Barnwell and Bamberg District by R. W. Kemp is enjoined.

11. Act No. 34 of the 1975 Acts of the General Assembly, as amended by Act No. 235 of the 1975 Acts of the General Assembly, is hereby declared unconstitutional. The office of Judge of the Family Court of Hampton and Jasper District has not been filled, and no judge shall be appointed.

12. Act No. 488 of the 1973 Acts of the General Assembly is hereby declared unconstitutional. David N. Wilburn, Jr., is hereby enjoined from further exercise of the duties of the office of Judge of the Family Court of Union County.

The Civil and Criminal Court of Union County, of which David N. Wilburn, Jr., is the judge, continues with the same jurisdiction it exercised on April 4, 1973.

13. Section 1 of Act No. 903 of the 1974 Acts of the General Assembly is hereby declared unconstitutional. Other sections of the Act are not in contest. Further exercise of the duties of the office of Associate Judge of the Family Court of Greenville County by James W. Sparks is enjoined.

14. Act No. 966 of the 1974 Acts of the General Assembly is declared unconstitutional insofar as it attempted to create the office of Associate Judge within the Civil and Criminal Court of Florence County, and the further exercise of the duties of Associate Judge of the Civil and Criminal Court of Florence County by Dan M. McEachin is enjoined.

15. Act No. 1037 of the 1974 Acts of the General Assembly is hereby declared unconstitutional, and further exercise of the duties of the office of Associate Judge of the Family Court of Charleston County by Richard E. Fields is enjoined.

16. Section 1 of Act No. 1230 of the 1974 Acts of the General Assembly is hereby declared unconstitutional insofar as it attempts to create an associate judgeship, and further exercise of the duties of the office of Associate Judge of the Family Court of Richland County by Harold R. Boulware is enjoined.

17. Act No. 11 of the 1975 Acts of the General Assembly is hereby declared unconstitutional, and further exercise of the duties of the office of Deputy Probate Judge of Saluda County by Daisy P. Porter is enjoined.

18. Act No. 68 of the 1975 Acts of the General Assembly is hereby declared unconstitutional. The office of Deputy Judge of the Probate Court of Union County has not been filled, and no person shall be appointed.

19. Act No. 120 of the 1975 Acts of the General Assembly and Act No. 211 of the 1975 Acts of the General Assembly are hereby declared unconstitutional. The judgeship created thereby for the Civil and Criminal Court of Beaufort County has not been filled, and no person shall be appointed.

20. Section 8A of Act No. 1158 of the 1974 Acts of the General Assembly is hereby declared unconstitutional. Further exercise of the duties of Deputy Probate Judge by the following individuals, appointed thereunder, is enjoined:

(1) Klyde Robinson in Charleston County,

(2) Joe A. Sanders in Richland County,

(3) Dorothy S. Wilson in Greenville County,

(4) Thomas G. Cooper, Jr., in Kershaw County,

(5) Ruth Cato in Aiken County,

(6) Lueva D. Marcoux in Cherokee County,

(7) Fred Zeigler in Dorchester County,

(8) Delia G. Stackhouse in Marion County, and

(9) Wallace Dickerson in Spartanburg County.

No other deputy probate judges shall be appointed pursuant to this Act. All other sections of Act No. 1158 remain effective. The demurrer of counsel for Fred Zeigler is patently without merit and is overruled.

21. Act No. 136 of the 1973 Acts of the General Assembly is hereby declared unconstitutional, and further exercise of the duties of the office of Deputy Probate Judge for Colleton County by Janeal W. Steltzer is enjoined.

22. Act No. 973 of the 1974 Acts of the General Assembly is hereby declared unconstitutional, and further exercise of the duties of the office of Master in Equity for Colleton County by O. H. Rhodes is hereby enjoined.

23. Act No. 256 of the 1973 Acts of the General Assembly is hereby declared unconstitutional, and the further

exercise of the duties of the office of Master in Equity for Cherokee County by Harrison R. Swink is hereby enjoined. Nothing herein contained shall affect the right of Harrison R. Swink to continue to serve as Judge of the Family Court of Cherokee County, which court was in existence on April 4, 1973.

24. Act No. 1261 of the 1974 Acts of the General Assembly, as amended by Act No. 40 of the 1975 Acts of the General Assembly, is hereby declared unconstitutional. The office of Deputy Probate Judge for Chesterfield County, which this Act attempted to create, has not been filled and no person shall be appointed.

25. Act No. 63 of the 1975 Acts of the General Assembly is hereby declared unconstitutional, and further exercise of the duties of Deputy Probate Judge for Horry County by Carolyn Wright is enjoined.

26. The motion to make Judge D. Carl Cook, who has been serving as Judge of the Civil and Criminal Court of Darlington County, a party to the action wherein his court has been sued, is hereby granted. Act No. 374 of the 1975 Acts of the General Assembly is hereby declared unconstitutional. No ouster pursuant to § 10-2256 was prayed for in the complaint, and no opinion relative to the right of D. Carl Cook to continue to serve is intimated herein.

We now reach the question heretofore reserved:

Are the decrees, orders, judgments, sentences and other official acts of the Courts, Judges and other persons, whose authority was established since April 4, 1973, by statutes herein declared unconstitutional, valid or void?

In the case of *State ex rel. McLeod v. The Municipal Court of the City of North Charleson, South Carolina, et al.,* Ray Therall and Thomas Tobiasson, through counsel, have petitioned this Court to intervene, each alleging that he has been convicted and sentenced for a crime by that court. Each claims that the Municipal Court of the City of North

Charleston did not have jurisdiction over his person and of the subject matter because Act No. 237 of 1973 which created the court is unconstitutional. They further ask that they be allowed to represent in the action a class of all persons similarly situated, and pray that their convictions and sentences be voided and the record thereof expunged.

Several defendants have raised this issue which has been reserved in their answers and/or counterclaims.

In addition, the South Carolina State Bar has petitioned this Court to be allowed to appear and to file a written brief as *amicus curiae*.

The motion of Therall and Tobiasson to intervene as parties to the case of the Municipal Court of the City of North Charleston is granted, but only for the purpose of contesting the validity of their own convictions and sentences; the motion to appear representing a class is denied. This Opinion shall be forwarded to their attorneys. The "intervenors' complaint" is accepted as setting forth their positions on the issue reserved. No further pleading shall be required of the State. Counsel for Therall and Tobiasson may file a brief with this Court as other parties hereto.

The motion of the South Carolina Bar to file a brief *amicus curiae* is granted. It shall be filed in this Court and copies sent to all parties or their attorneys.

ORDERED

That not later than the 5th day of January, 1976, all parties, interested in the question reserved, may file a brief with this Court. The Attorney General shall serve a copy of his brief on all defendants and each of the defendants electing to file a brief shall serve it upon the Attorney General, but defendants need not serve each other. All parties filing briefs, which may be typewritten, shall supply this Court with fifteen copies.

All of these actions shall remain open for such additional Orders as may appear appropriate, and all parties to these

actions remain before the Court and subject to the jurisdiction hereto.

## SUPPLEMENTAL OPINION

*Per Curiam:*

Having received briefs and heard argument of counsel, we now proceed to rule upon the question reserved, and will declare the effect of the decrees, orders, judgments, sentences, and other official acts of the courts, judges and other persons whose authority was established since April 4, 1973, by legislative acts now declared unconstitutional, as set forth hereinabove.

In making our determination, we have had the benefit of oral argument of interested parties and have received briefs from the Attorney General as plaintiff in these actions, from counsel for the Municipal Court of the City of North Charleston, from counsel for several defendants, and from the South Carolina Bar as *amicus curiae,* all of which urge that the acts of the officials involved, before December 10, 1975, should be declared valid and binding.

We have also received briefs of counsel for intervenors Ray Therrell and Thomas Tobiasson, and from the Defense Clinic of the University of South Carolina Law Center as *amicus curiae,* all of which briefs, relying largely upon *Norton v. Shelby County,* 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178 (1886), urge this Court to hold that, "there can be no judicial officer if there is no office to fill; an unconstitutional act is, legally, as inoperative as though it had never passed." They submit that all acts of the courts and judges should be declared void.

We first dispose of a threshold issue raised by the briefs:

Are the courts and judicial officers *de facto* courts and judicial officers whose judgments, sentences, and actions must be honored, notwithstanding the fact that the acts of

the legislature, conferring authority upon them, have been declared unconstitutional?

In the case of *In re Wingler,* 231 N. C. 560, 58 S. E. (2d) 372 (1950), the Supreme Court of North Carolina set forth what we believe to be an appropriate definition of a "judge *de facto.*"

"A judge *de facto* may be defined as one who occupies a judicial office under some color of right, and for the time being performs its duties with public acquiescence, though having no right in fact. Cooley: Constitutional Limitations, 8th. Ed., Vol. 2, page 1355. A person will be deemed to be a *de facto* judge when, and only when, these four conditions concur: ·(1) He assumes to be the judge of a court which is established by law; (2) he is in possession of the judicial office in question, and is discharging its duties; (3) his incumbency of the judicial office is illegal in some respect; and (4) he has at least a fair color of right or title to the judicial office, or has acted as its occupant for so long a time and under such circumstances of reputation or acquiescence by the public generally as are calculated to afford a presumption of his right to act and to induce people, without inquiry, to submit to or invoke offcial action on his part on the supposition that he is the judge he assunmes to be."

The opinion goes on to say:

"For all practical purposes, a judge *de facto* is a judge *de jure* as to all parties other than the State itself. His right or title to his office can not be impeached in a habeas corpus proceeding or in any other collateral way. . . . So far as the public and third persons are concerned, a judge *de facto* is competent to do whatever may be done by a judge *de jure*. In conseqcence, acts done by a judge *de facto* in the discharge of the duties of his judicial office are as effectual so far as the rights of third persons or the public are concerned as if he were a judge *de jure*. .....

.   .   .   .   .

"The *de facto* doctrine is indispensable to the prompt and proper dispatch of governmental affairs. Endless confusion

and expense would ensue if the members of society were required to determine at their peril the rightful authority of each person occuping a public office before they invoked or yielded to his official action. . . ."

This doctrine, as defined above, appears to have general acceptance. *See* 46 Am. Jur. (2d), *Judges* § 243 at 263 (1969); 48 C. J. S. *Judges* § 2 at 949-950 (1947). Indeed, the doctrine has long been a part of the law of this State. In *Cromer v. Boinest,* 27 S. C. 436, 3 S. E. 849 (1887), this Court, in upholding the decree of a *de facto* judge, declared:

"The *de facto* doctrine rests upon considerations of public policy and necessity. It was introduced into the law for the purpose of protecting the interests of the public, as well as those of private individuals, where those interests were involved in the official acts of one who may be found exercising the duties of an office, though without lawful authority. . ."

The judges whose judgeships were, by legislative statutes, created after April 4, 1973, as additional judgeships within courts already in existence, meet the *Wingler* test and we declare their acts to be valid and immune from collateral attack. These are:

1. Judge James W. Sparks of the Family Court of Greenville,

2. Judge Dan M. McEachin of the Civil and Criminal Court of Florence,

3. Judge Richard E. Fields of the Charleston County Court,

4. Judge Harold R. Boulware of the Family Court of Richland County,

5. Deputy Probate Judge Daisy P. Porter of Saluda County,

6. Deputy Probate Judge Klyde Robinson of Charleston County,

7. Deputy Probate Judge Joe A. Sanders of Richland County,

8. Deputy Probate Judge Dorothy S. Wilson of Greenville County,

9. Deputy Probate Judge Thomas G. Cooper, Jr. of Kershaw County (and Deputy Probate Judge Carl R. Reasonover, whom he succeeded),

10. Deputy Probate Judge Ruth Cato of Aiken County,

11. Deputy Probate Judge Lueva D. Marcoux of Cherokee County,

12. Deputy Probate Judge Fred Zeigler of Dorchester County,

13. Deputy Probate Judge Delia G. Stackhouse of Marion County,

14. Deputy Probate Judge Wallace Dickerson of Spartanburg County,

15. Deputy Probate Judge Janeal W. Steltzer of Colleton County, and

16. Deputy Probate Judge Carolyn Wright of Horry County.

Inasmuch as all of these judicial officers have held *de facto* judgeships within courts already in existence on April 4, 1973 (which courts continue in existence after December 10, 1975), no problem should be encountered relative to enforcement of their decrees, directives, sentences or other actions. The courts which they served continue with other judges in office who can complete any unfinished business which may have been commenced.

The acts of these judges now removed are just as effective as if the acts had been performed by the judge who remains as judge of the court.

We now proceed to consider those courts (and their judges) which did not exist on April 4, 1973, and which were brought into being by legislative acts since that date. They are:

1. The Municipal Court of North Charleston, of which Casper H. Padgett, Sr., served as judge,

2. The Family Court of Georgetown County, of which John P. Hazzard, IV, served as judge,

3. The Family Court of Allendale, Barnwell and Bamberg Counties, of which R. W. Kemp served as judge, and

4. The Family Court of Union County, of which David N. Wilburn served as judge.

We are of the opinion that these courts, and the judges serving them, were also *de facto* and that their final judgments, decrees, sentneces and actions are binding on the parties involved and on the public, and are not subject to collateral attack. The contrary view, which counsel for Therall and Tobiasson, and the Defense Clinic would have us adopt, is overly technical. That view is based on the rule set forth in *Norton v. Shelby, supra,* wherein it was held that an unconstitutional legislative act is not a law and cannot create an office. It held that there can be no officer, either *de jure* or *de facto,* if there is no office to be filled. It is sometimes referred to as the "general rule," however, the rule has been often limited or an exception thereto made to the extent that, where there is a legislative act or municipal ordinance in form creating an office and an officer is elected or appointed to such office, then though the legislative act or ordinance is unconstitutional or invalid, the officer elected, or appointed and acting thereunder is an officer *de facto* until the act or ordinance is declared by the courts to be unconstitutional or invalid. 99 A. L. R. 289.

Cases coming under the execption hold that where a court or office has been established by an act of the legislature, apparently valid, and the court has gone into

operation, or the office is filled and exercised under such act, it is regarded as a *de facto* court or office notwithstanding the fact that the act is subsequently declared unconstitutional. In *re Hans,* 174 Neb. 612, 119 N. W. (2d) 72 (1963) ; *State v. Ness,* 75 S. D. 373, 65 N. W. (2d) 923 (1954) ; *Marckel Co. v. Zitzow,* 218 Minn. 305, 15 N. W. (2d) 777 (1944) ; *Gildemeister v. Lindsay,* 212 Mich. 299, 180 N. W. 633 (1920) ; 99 A. L. R. *supra,* at 306.

These authorities represent the better and more practical rule of law. The court in *Marckel Co. v. Zitzow, supra,* expressed the considerations supporting such a rule:

"Simply to suggest that there cannot be a *de facto* court without a *de jure* court and a *de jure* office to fill, seems to us too much of a verbal distinction and too summary a way to dispose of a question with such far-reaching implications. Important official acts were actually performed by the judge of the court created under a statute apparently regularly enacted by the branch of the government to which the power to make laws has been delegated by the constitution. The acts of the incumbent were as potent, as far as the public is concerned, as were the acts of any *de jure* officer performing a duty of a legally existing office. The public, in its organized capacity, as well as private citizens, has acquiesced in and submitted to its authority. Under those circumstances, it appears to us that to suggest that, because there cannot be a *de facto* court without a *de jure* court, all such acts are invalid is too hypercritical a refinement and one which should have no support in law or reason. In a situation such as is presented here, the courts, in the practical administration of justice, should not be bound by abstract dogmas or fine theoretical distinctions, but rather, in the spirit of realism, should be prompted by considerations of necessity, convenience, and public good."

Our holding in *State ex rel. McLeod v. West,* 249 S. C. 243, 153 S. E. (2d) 892 (1967) is consistent with this view. That case involved the validity of a fifty-member Sen-

ate. The constitution mandated a forty-six member Senate. We held in effect that notwithstanding the fact that a fifty-member Senate was unconstitutional, the acts of the General Assembly, of which the Senate was a part, were not null and void although there was no Senate *de jure*. We held that there was a Senate *de facto* and that the acts of the Senate, prior to our decision and until the next general election, were valid. The Senate was permitted to carry out its legislative functions as a *de facto* body even though the law which provided for its composition was invalid. Public policy considerations, which were influencing there, are equally present here. In like fashion, these four courts, and their judges, were *de facto*.

The enforcement of final judgments and sentences of these four courts should create no serious problem. A final judgment rendered by one court is often-times enforced by another.

There are, however, some judgments as, for example, for custody of children and payment of alimony, never absolutely final because the judgment is always subject to review upon a change of conditions. Orders for payment of alimony and child support continue under the supervision of the court for enforcement of the directive to pay. There may also be cases pending in some, or all, of these four courts, in varying degrees of completion. For example, a divorce case may have been filed but not heard, or may have been heard but a final order not issued. For example, a family court judge may have a youthful offender on probation, with duty to report to the family court probation officer. The interest of the public, as well as litigants involved, would not be served by a ruling that incompleted cases in these courts are ended. Were such the case, the pending actions would have to be commenced anew, and the prosecutions against youthful offenders would have to be processed again.

We shall endeavor to provide for a final disposition of all cases pending in these four courts, with a minimum of inconvenience to the parties involved.

1. All cases and all unfinished business, of whatever nature, pending in the Municipal Court of North Charleston are hereby transferred to the Recorder's Court for the City of North Charleston to the extent of its jurisdiction.

2. All civil cases and all unfinished civil business, of whatever nature, pending in the Family Court of Union County are hereby transferred to the Union County Court to the extent of its jurisdiction. *

3. Should any civil matter now pending in the Family Court of Union County involve matters beyond the jurisdiction of the Union County Court, the same shall be transferred to the Court of Common Pleas for Union County.

4. All civil cases and other unfinished civil business, of whatever nature, pending in the Family Court of Georgetown County, or in the Family Court of Allendale, Barnwell and Bamberg Counties, are hereby transferred to the Court of Common Pleas of the respective counties.

5. All unfinished cases of a criminal nature and cases which involve delinquent, neglected, and abandoned children, youthful offenders and their supervision and probation, now pending within the Family Court of Georgetown County, and/or the Family Court of Allendale, Barnwell and Bamberg Counties, are hereby transferred to the Court of General Sessions and to the South Carolina Probation and Parole authorities of the Courts of General Sessions of the respective counties. All unfinished cases of a criminal nature and cases which involve delinquent, negelected, and abandoned children, youthful offenders and their supervision and probation, heretofore pending in the Family Court of Union County, are hereby transferred to the Union County

---

* The Union County Court is apparently erroneously referred to in Act No. 488 of 1973 as the Union Civil and Criminal Court.

Court. Such action as the Union County Court has taken heretofore in these matters is hereby validated and approved.

6. The courts, to which the transfers are ordered, shall have full authority to proceed with the processing and finalization of all pending matters to the extent of their jurisdiction, the same as if the proceedings had been brought in that court orginally.

Having ruled that these courts, including the Municipal Court of North Charleston, were *de facto* courts with *de facto* judges, it necessarily follows that the application for relief on the part of Therrell and Tobiasson is denied.

We now reach cases which involve:

1. The Civil and Criminal Court of Spartanburg,

2. The County Court of Charleston County,,

3. The County Court of Marlboro County,

4. The Pickens Civil and Criminal Court,

5. The Family Court of Horry County,

6. The Civil and Criminal Court of Oconee County, and

7. The Probate ourt of Geogetown County.

Statutes, set out hereinabove, undertook to alter the jurisdiction of these courts. We hold that each of these courts has no more, and no less, jurisdiction and authority than it had on April 4, 1973. We rule, however, that any actions taken by these courts, and the judges and personnel thereof, until December 10, 1975, consistent with the attempted change in jurisdiction, are hereby validated.

In like fashion, we validate the official actions of the Master in Equity for Colleton County and the Master in Equity for Cherokee County until December 10, 1975.

We are also of the opinion that the Honorable D. Carl Cook, Judge of the Civil and Criminal Court of Darlington County, served as a *de facto* judge until December 10, 1975, and his official acts until that date are hereby declared valid.

Our ruling, as to all courts and judges, is supported by 21 C. J. S. *Courts* § 116 ,wherein it is said:

*"Where a statute conferring jurisdiction is held unconstitutional,* such decision will have no retroactive effect on proceedings regularly had under the law as it existed before such decision."

It is consistent with the holding of our court in *Thomas v. Poole,* 19 S. C. 323 (1882), and *Herndon v. Moore,* 18 S. C. 339 (1883).

We have attempted to anticipate all of the problems which might arise incident to the cases which have been processed in the courts involved in these actions. These actions shall, however, remain open, and all parties remain before the court for such additional directives, if any, as may be required.