296 S.C. 79 (1988)
370 S.E.2d 872
SPARTANBURG COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner
v.
Linda PADGETT, Doug Deal and Roger Blackwell, Respondents. In re Karen K. ROGERS, Appellant, and The Family Court of the Seventh Judicial Circuit, Respondent.
22895
Supreme Court of South Carolina.
Heard June 7, 1988.
Decided August 1, 1988.
*80 Chief Deputy Atty. Gen. Donald J. Zelenka, Columbia, and Sol. Holman C. Gossett, Jr., Spartanburg, for appellant.
Asst. Atty. Gen. J. Emory Smith, Jr., Columbia, for respondents.
Heard June 7, 1988.
Decided Aug. 1, 1988.
Per Curiam:
Karen K. Rogers, an Assistant Solicitor for the Seventh Judicial Circuit, appeals the Order of a Family Court Judge, the Honorable L. Mendel Rivers, holding her in contempt of court for underestimating the time she would need to try a case.
*81 Attorney Rogers requested one hour to try a child abuse case. Mrs. Rogers presented four witnesses. The defendants' attorney, who was retained the day before the hearing, did not present any witnesses. The case concluded thirty minutes past the hour requested by Mrs. Rogers.
Prior to these proceedings, Judge Thomas E. Foster, then Chief Administrative Judge for the Family Courts of the Seventh Judicial Circuit, had issued a "Notice to Attorneys," posted in the Spartanburg Courthouse, which provided, inter alia:
"Attorneys are requesting insufficient amounts of court time for contested cases. It appears this is being done to avoid having pretrial conferences. Obviously, this causes many schedules to be backed up. In the future, the Court will issue sanctions against the attorneys for this action."
At the conclusion of the hearing, Judge Rivers ordered the courtroom cleared of everyone except the lawyers. He then stated:
"THE COURT:  and, on the record, don't do this again!
Judge Hall is having to hear one of my cases, because you didn't ask enough time, and you should have known better; you had five witnesses; this man had at least two; and this man could well have had at least one.
You knew, or should have known you had a potential eight witnesses. This is not a wild case, and you know better than this.
The sanction  the attorney for the petitioner, Karen Rogers, is fined the sum of fifty dollars; you will give her a reasonable period of time to pay the fine, but if she does not pay it very soon, within the next thirty minutes or so, you are to bring her back to me, and I will put her in jail. Do you understand that?
SHERIFF'S DEPUTY ROSENBERG: Yes, Sir."
Mr. Turnipseed, opposing counsel to Mrs. Rogers, then asked to be heard in opposition to the sanction and stated, in part:

*82 "I understand the Court is concerned with judicial economy, but, I will tell you this. The Court is putting way too much burden on the members of the Bar when they require a lawyer setting a case in front of this Court to know within five minutes, or ten minutes, or an hour, or thirty minutes on a matter that might last up to an hour or an hour-and-a-half, exactly how long it's going to take.
She doesn't know how long I'm going to cross examine her witnesses; I don't know long she is going to cross examine my witnesses; she didn't even know I was in the case until I walked up here today, because I didn't get in the case until yesterday.
She had no idea whether this case would be settled or not. It's not her fault; I disagree with Your Honor's ruling, and I want to put that on the record."
Judge Rivers refused to reconsider his ruling. Later that day, Judge Rivers issued a formal "Order of Sanction" in which he admonished Mrs. Rogers for estimating the case would only take one hour because he stated that the case "should have taken over two hours, a fact which [Mrs. Rogers] either knew or should have known." The judge based his sanction on the "Notice to Attorneys" issued by Judge Foster.
On appeal, Mrs. Rogers challenges the validity of Judge Rivers' Order of Sanction on two grounds: first, she contends that Judge Rivers abused his discretion in that the record does not contain any evidence that she willfully disobeyed a court order; second, she contends that because the "Notice to Attorneys" issued by Judge Foster is a local rule which is unconstitutional and, therefore, void, Judge Rivers had no authority to sanction and fine appellant. We agree with each of appellant's contentions and reverse and vacate.

I. JUDICIAL ABUSE OF DISCRETION
Willful disobedience of an Order of the Court may result in contempt. Curlee v. Howle, 277 S.C. 377, 287 S.E. (2d) 915 (1982), (Father held in contempt for willfully disobeying a Court Order to return children to their mother on a certain day). A willful act is defined as one "done voluntarily and intentionally with the specific *83 intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." Black's Law Dictionary 1434 (5th Ed. 1979). The court recently held that contumacious behavior which tends to bring the authority and administration of the law into disrespect may also support a finding of contempt. Ex Parte: Stone v. Reddix-Smalls, ___ S.C. ___, 369 S.E. (2d) 840 (S.C. 1988).
In order to sustain a finding of contempt, the record must be clear and specific as to the acts or conduct upon which such finding is based. Curlee, 287 S.E. (2d) at 918. A determination of contempt is within the sound discretion of the trial judge, but is subject to reversal where based on a finding that is without evidentiary support or where there has been an abuse of discretion. Pratt v. S.C. Dep't of Social Services, 283 S.C. 550, 324 S.E. (2d) 97 (Ct. App. 1984).
We hold that the trial judge abused his discretion in finding Mrs. Rogers in contempt of court because she neither willfully disobeyed a Court Order nor acted disrespectfully towards the Court. Mrs. Rogers merely underestimated the amount of time she would need to try her case by thirty minutes. Considering the myriad of variables attorneys must predict when scheduling cases, this Court finds that Mrs. Rogers' miscalculation of thirty minutes was not intended to disobey the Court's Notice to Attorneys. Until the day of the hearing, Mrs. Rogers did not know that the defendants were represented by counsel. Even if she had known the defendants would be represented, Mrs. Rogers could not have predicted with precision the amount of time required to try the case. We recognize that it is difficult to predict how extensively an opposing attorney will crossexamine one's witnesses. Likewise, witnesses answer questions in varying ways: some witnesses are long-winded; others give monosyllabic responses. Additionally, some attorneys interject many objections to the proceedings  another factor which is difficult to calculate. Here, the defendants' attorney vigorously opposed the introduction of a statement contained in a medical history, causing an extensive discussion between the judge and the attorneys over its admissibility. *84 Another variable attorneys must consider in scheduling time is that the judge will question the witnesses and at times deliberate and decide the case from the bench as Judge Rivers did in the instant case. There is absolutely nothing in the record to indicate that Mrs. Rogers intentionally disobeyed the "Notice to Attorneys" by scheduling only one hour for her hearing.

II. LOCAL ADMINISTRATIVE RULES
Article V, § 1 of the South Carolina Constitution mandates a unified judicial system. Section 4 of the Judicial Article designates the Chief Justice of this Court as the administrative head of the unified judicial system and directs that this Court make rules governing the administration of all courts in this state. Further, this section provides that his Court shall promulgate rules governing practice and procedure in all courts subject to the statutory law. Section 20-7-1470 of the 1976 Code of Laws of South Carolina, as amended, directs that this Court provide by rule for the administration of the family court system.
Pursuant to these provisions, the Chief Justice appointed Judge Foster as Chief Judge of the Seventh Circuit Family Courts. The Order of Appointment sets forth the administrative authority of the Chief Judge.[1] Paragraph 11 of this Order provides:
"Except as specifically authorized herein, no rule affecting the operation of the courts shall be adopted without prior approval of the Chief Justice."
The "Notice to Attorneys" which is at issue here is clearly a local administrative rule affecting the operation of the courts. It has not been submitted to or approved by the Chief Justice. It exceeds the authority vested in the Chief Judge under the Order of Appointment. It is nowhere authorized by the statutory law of this state.
*85 We had occasion to address the issue of non uniform local circuit court rules affecting practice and procedure in State v. Duncan, 274 S.C. 379, 382, 264 S.E. (2d) 421, 423 (1980) where we declared a local circuit court rule regulating mutual discovery unconstitutional and void. We hold today that by reason of the mandates of Article V of the South Carolina Constitution, a family court may not adopt its own rules of administration or practice and procedure. Such local, non uniform rules are inconsistent with both the provisions and purpose of the constitutional mandate and are therefore unconstitutional and void.
We take this occasion to admonish the trial bench of this state that there is no place in the unified judicial system for local rules which have the effect of varying the administrative and procedural rules of practice from circuit to circuit and court to court. As we said in Cort Industries Corp. v. Swirl, Inc., 264 S.C. 142, 145, 213 S.E. (2d) 445, 446 (1975):
"The people in approving Article V mandated a uniform system for the administration of justice in South Carolina."
To paraphase our holding in Cort Industries, if local, non uniform rulemaking were permitted, "the local factionalized court system would be exhumed and Article V interred. [T]he mandate of Section 1 would be rendered a mere hollow formalistic expression of preference for a uniform system." Cort Industries, 264 S.C. at 146-47, 213 S.E. (2d) at 446. Accord, State ex rel. McLeod v. Court of Probate, 266 S.C. 279, 223 S.E. (2d) 166 (1975) (non uniform jurisdiction for various courts declared unconstitutional); State ex rel. McLeod v. Crowe, 272 S.C. 41, 249 S.E. (2d) 772 (1978) (non uniform magistrates court fees declared unconstitutional); State v. Duncan, 274 S.C. 379, 264 S.E. (2d) 421 (1980) (non uniform local circuit court rule declared unconstitutional);
The purpose of these mandates in Article V and the development of a South Carolina Court Register pursuant to S.C. Code Ann. §§ 14-3-910, et seq. (1976, as amended) is, among other things, to insure that each participant in the judicial system, be he litigant, lawyer or judge, can find in the *86 Constitution, statutes and rules of this Court a court system which is the same in each county of this state.
We further admonish the trial bench that the fair and efficient functioning of our trial system demands the cooperation of both the lawyers and parties on the one hand and the judiciary on the other. Mutual respect, civility and courtesy are the lubricants which oil this great adversarial engine  the American system of adjusting citizens' disputes which is unique among the nations.
Regrettably, in this matter, Judge Rivers failed to observe both the mandates of this state's Constitution and the practical requirements of fairness.
We, therefore, reverse and vacate the contempt finding of the trial judge.
Reversed and vacated.
NOTES
[1] Appointments are generally made every six months. The format of the Order of Appointment is found in the South Carolina Court Register at A-19.