516 S.E.2d 1

**AMERICAN FEDERAL BANK, FSB, Respondent,**

v.

**Dawn L. KATEMAN, Defendant.**

**In re First Union National Bank, Appellant.**

**No. 2970.**

Court of Appeals of South Carolina.

Heard Feb. 9, 1999.

Decided April 5, 1999.

H. Sam Mabry, III, and J.D. Quattlebaum, both of Haynsworth, Marion, McKay & Guerard, of Greenville, for appellant.

Jack D. Griffeth and V. Clark Price, both of Love, Thornton, Arnold & Thomason, of Greenville, for respondent.

HOWELL, Chief Judge:

First Union National Bank appeals the circuit court's order holding it in contempt of an order of attachment and awarding compensatory damages to American Federal Bank, FSB. We reverse.

## I.

On January 13, 1997, American Federal brought an action against Dawn L. Kateman for the alleged breach of a promissory note. American Federal sought a judgment for $5,559.30, plus interest and attorney's fees.

On February 4, 1997, American Federal sought to attach real property located at 207 Henderson Street, Greenville, South Carolina. In the supporting affidavit, M. Phyllis White, a recovery officer for American Federal, stated that Kateman had revealed her intention to hinder American Federal's recovery of the debt by disposing of or encumbering the property so that she would have little or no equity in the property.

By order filed February 6, 1997 (the Order), the circuit court attached the Henderson Street property. The Order stated that Kateman was attempting to dispose of or encumber the Henderson Street property and enjoined Kateman from "disposing, selling, transferring or encumbering" the property. The Order further provided that

> to the degree that the property described above is now converted to or comprised of sale or financing proceeds, stocks, bonds, cash, savings, certificates of deposit or other assets liquid and negotiable in nature, whether in the possession of the defendant or a third party custodian, then and in that event, this Order is to be placed in the hands of the Sheriff of this county who shall immediately seize and take custody of such property to the extent of the debt described in the Complaint.

Charles David Riddle, a deputy sheriff with the Greenville County Sheriff's office, delivered the Order to First Union on February 13, 1997. Riddle spoke with Frank Wilson, a vice president with First Union. Wilson verified that Kateman had an account with the First Union and gave the account number to Riddle. Wilson informed Riddle that the balance of the account was $4,718.31. Wilson assured Riddle that he had placed a freeze on Kateman's account.

Wilson presented the Order to Terry Haney, First Union's area operations manager in Greenville, who faxed the Order to First Union's legal division in Charlotte. The legal division questioned whether the account should be frozen, given First Union's lack of knowledge of whether the funds in the account were derived from the attached property. Haney sought more information from Riddle, who sent her a letter from American Federal's attorney. The legal division ultimately concluded that it should not attach Kateman's account, because there was no indication that the funds in the account

were derived from the Henderson Street property. First Union then lifted the freeze on Kateman's account. On February 19, 1997, First Union honored a $4,000 check drawn on Kateman's account and payable to her live-in boyfriend.

On February 26, 1997, Terry Haney left a message asking Deputy Riddle to call her. When Riddle returned her call the next day, she informed him that First Union had lifted the freeze on the account. She called again requesting more information on the attachment. Riddle referred her to American Federal's attorney.

On March 5, 1997, the circuit court issued an order (the Second Order) for the sheriff to liquidate Kateman's personal and real property to satisfy the judgment against her.[1] The Second Order directed the sheriff to liquidate Kateman's First Union account and specifically directed First Union to assist and comply with the order.

On March 18, 1997, Riddle returned to First Union with the Second Order. After its legal division reviewed the Second Order, First Union restrained the account, which had a balance of only $484.97.

Thereafter, American Federal petitioned the circuit court for a rule to show cause why First Union should not be held in contempt for its conduct relating to Kateman's account. After a hearing, the circuit court held First Union in contempt, concluding that First Union and its employees willfully and intentionally disregarded and refused to comply with the Order. The court ordered First Union to pay American Federal the balance of Kateman's account as of February 13, 1997, plus attorney's fees and costs.

## II.

On appeal, First Union argues that the circuit court erred by holding it in contempt because the Order did not direct First Union to do or refrain from doing any act. We agree.

"Contempt results from the willful disobedience of a court order." *Henderson v. Henderson,* 298 S.C. 190, 197, 379

---

1. Kateman did not respond to American Federal's complaint, and a default judgment in the amount of $7,437.35 was entered against her on February 14, 1997.

S.E.2d 125, 129 (1989). However, "[o]ne may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do." *Welchel v. Boyter*, 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973).

In this case, the Order was limited to the Henderson Street property and any proceeds derived from the sale, transfer, or encumbrance of that property; it was not directed to any other property owned by Kateman. The scope of the Order, therefore, was limited in operation by its very specificity. While the Order required third parties to turn over any proceeds from the Henderson Street property, the First Union account was not mentioned in the Order, nor was there any information in the Order from which First Union could determine that the funds in its Kateman account were derived from the Henderson Street property. Because the Order did not direct First Union to do or refrain from doing anything, First Union's actions with regard to the Kateman account did not violate the terms of the Order.

It may be that the deputy serving the Order on First Union or the letter accompanying the Order indicated that the First Union account contained funds that were subject to attachment. Any such information, however, cannot provide the basis for holding First Union in contempt, because that information was not included in the Order, and the Order as written simply did not encompass the funds in Kateman's First Union account.[2] *See Welchel*, 260 S.C. at 421, 196 S.E.2d at 498 (To support a finding of contempt for violation of a court order, the "language of the commands must be clear and certain rather than implied."); 17 Am.Jur.2d *Contempt* § 157 (1990) ("Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the mandate alleged to be violated must be clearly expressed rather than implied.").

---

2. Given the timing of the events in this case, perhaps First Union should have, as a matter of courtesy towards another bank, contacted American Federal before it lifted the freeze on Kateman's account. In fact, it is at least arguable that First Union breached some duty it owed to American Federal and that First Union could therefore be held liable to American Federal. Nevertheless, displeasure with First Union's

Because the Order was specifically limited to funds derived from the Henderson Street property and nothing in the Order indicated that the funds in Kateman's account at First Union were derived from the Henderson Street property, the circuit court erred in concluding that First Union willfully violated the order. *See Spartanburg County Dep't of Social Services v. Padgett,* 296 S.C. 79, 83, 370 S.E.2d 872, 874–75 (1988) ("A determination of contempt is within the sound discretion of the trial judge, but is subject to reversal where based on a finding that is without evidentiary support or where there has been an abuse of discretion."); *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997) ("An abuse of discretion occurs when there is an error of law or a factual conclusion which is without evidentiary support."). Accordingly, the circuit court's order holding First Union in contempt is hereby reversed. In light of our disposition of this issue, we need not address the other issues raised by First Union.

**REVERSED.**

GOOLSBY and CONNOR, JJ., concur.

---

chosen course of action cannot justify a contempt finding when First Union did not violate any requirement of the Order.