530 S.E.2d 128

**Luz C. TIRADO (n/k/a Cruz–Garcia), Appellant,**

v.

**Angel M. TIRADO, Respondent.**

**No. 3150.**

Court of Appeals of South Carolina.

Heard March 8, 2000.
Decided April 10, 2000.

---

Wesley W. Bales, of Columbia, for appellant.

Eddye L. Lane, of Columbia, for respondent.

HEARN, Chief Judge:

This is an appeal from a family court order declining to hold Angel Tirado (Husband) in contempt and refusing to require him to reimburse Luz C. Tirado (Wife) for monies paid to him as military disability pay. We affirm.

## FACTS/PROCEDURAL HISTORY

Husband and Wife were married in December 1968 and divorced in February 1994. At the time of the divorce, Husband was retired from the military with a disability rating of 10%, and received retirement benefits of $1,157.00 per month. The decree of divorce approved and incorporated a settlement between the parties whereby Husband agreed to pay Wife one-half of his "military retirement pay," to begin immediately upon sale of the marital residence. Pursuant to the agreement, the Defense Finance and Accounting Service (DFAS) was to disburse the payments directly to Wife each month from Husband's retirement account.[1]

Following the divorce DFAS commenced sending Wife a monthly check for $578.50. Over the next four years, Wife consistently received her monthly payments, occasionally realizing slight increases in the amount due to cost of living allowances. In early 1998, however, Husband was declared 40% disabled, a significant increase from his previous impairment rating of 10%. Thereafter, on April 1, DFAS notified Wife that future disbursements from Husband's retirement account would decrease in accordance with Husband's recently-increased disability status.[2] As a result, Wife's DFAS

---

1. The parties' agreement erroneously referred to DFAS as the "Military Retired Pay Center."

2. Veterans receiving retirement pay may apply for disability benefits if they are rendered disabled as a result of military service. However, "[i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Mansell v. Mansell,* 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Since disability

check for the month of April 1998 reflected a reduced payment, from $591.98 to $483.48. The next month DFAS again reduced the amount of Wife's check to $444.48.

When Husband refused to reimburse Wife for the deductions, Wife filed a complaint seeking a finding of contempt against Husband and an order directing him to reimburse her for her portion of the diverted retirement funds. Ultimately, the family court issued an order refusing to grant the relief requested by Wife.

## LAW/ANALYSIS

### I. Military Retirement Benefits

■ Wife argues the family court erred in failing to order Husband to reimburse her for the reduction in her DFAS check attributable to Husband's increased disability rating. We disagree.

■ It is well settled in this state that military retirement benefits accrued during marriage are subject to equitable apportionment. *See Freeman v. Freeman*, 318 S.C. 265, 268, 457 S.E.2d 3, 5 (Ct.App.1995); *Price v. Price*, 325 S.C. 379, 383, 480 S.E.2d 92, 94 (Ct.App.1996). Here, Husband and Wife entered into a voluntary separation agreement which the family court incorporated into the final divorce decree. The relevant portion of the agreement states:

> The Husband receives military retirement pay on a monthly basis. The Husband agrees that one-half (½) of this military retirement pay should be paid monthly directly to the Wife from the Military Retired Pay Center, beginning immediately after the marital residence has been sold.... The parties to this agreement shall immediately notify the Military Retired Pay Center of the sale of the marital residence

benefits are exempt from federal, state, and local taxes, military retirees prefer, when possible, to waive retirement pay in favor of disability benefits in order to increase their after-tax income. *Price v. Price*, 325 S.C. 379, 383, 480 S.E.2d 92, 94 (Ct.App.1996) (citing *Mansell*, 490 U.S. at 583–584, 109 S.Ct. 2023). Accordingly, because DFAS calculates Wife's one-half share of Husband's retirement pay and sends it directly to her, Husband's post-divorce waiver of retirement pay in favor of increased disability benefits resulted in an automatic, corresponding reduction in Wife's DFAS check.

and therefore of the need for the Center to begin making monthly payments of one-half (½) of the military retirement pay to the Wife.

In *Price,* this court specifically held that a husband may not subvert his agreed-upon settlement obligations to his former wife by waiving military retirement pay in favor of disability benefits. *See Price,* 325 S.C. at 383, 480 S.E.2d at 94 (recognizing that while the Supreme Court has held a state court may not treat military disability benefits as property subject to equitable apportionment, a party cannot use this holding "to undermine [an] [a]greement approved by the [family] court") (discussing *Mansell v. Mansell,* 490 U.S. 581, 594–595, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989)); *cf. Fisher v. Fisher,* 319 S.C. 500, 505, 462 S.E.2d 303, 305 (Ct.App.1995) (finding husband's unilateral decision to accept voluntary separation incentive payments to avoid risking an involuntary discharge before reaching the mandatory service requirements for Navy retirement did not bar wife's prior settlement claim to 20% of his "military retirement benefits"; court stated that a "husband cannot, by his voluntary act of changing the plan under which he will receive his post-military service payments, divest [a] wife of her rights" as contemplated under a prior court-approved settlement agreement).

Husband contends, and the trial court found, that our prior opinion in *Price v. Price,* 325 S.C. 379, 480 S.E.2d 92 (Ct.App. 1996), is distinguishable. We agree.

There are important distinctions between the facts of this case and those presented in *Price.* In *Price,* the agreement stated the wife would receive 34% of the husband's "gross monthly military retirement pay" whereas here, the agreement afforded Wife one-half of Husband's "military retirement pay." Thus, the court in *Price* noted that although the agreement therein did not define "gross monthly military retirement pay," the record indicated that the parties calculated the amount owed using a figure that included disability pay. The opinion further stated: "Given the fact that Husband agreed, after *Mansell,* to pay Wife a percentage of his gross monthly military retirement pay, which included disability pay, he should not be permitted to complain that the family court erred in enforcing the terms of the agreement." *Price,*

325 S.C. at 383, 480 S.E.2d at 94. This is not the case here where, at the time the parties reached their agreement, Husband was receiving 10% of his gross monthly retirement pay in the form of disability benefits *and* this portion was excluded from the Wife's 50% share. Furthermore, unlike in *Price* where the husband directly paid the wife her share of the retirement benefits, here DFAS made the payments to Wife. Thus, we hold that the facts of this case are distinguishable from those in *Price* and that under *Mansell,* Wife is not entitled to any portion of Husband's increased disability pay.

## II. Contempt

■ Wife further contends the family court erred in failing to find Husband in contempt. We disagree.

■ Contempt is a consequence of the willful disobedience of a court order. *See Henderson v. Henderson,* 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989); *American Fed. Bank, FSB v. Kateman,* 335 S.C. 273, 276, 516 S.E.2d 1, 2 (Ct.App. 1999). A willful act is one "done voluntarily and intentionally with the specific intent ... to fail to do something the law requires to be done...." *Spartanburg County Dep't of Soc. Servs. v. Padgett,* 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988) (quoting *Black's Law Dictionary* 1434 (5th ed.1979)). A finding of contempt, therefore, must be reflected in a record that is "clear and specific as to the acts or conduct upon which such finding is based." *Curlee v. Howle,* 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982).

■ A decision on contempt rests within the sound discretion of the trial court and is subject to reversal only for abuse or where the decision is based on a finding that is without evidentiary support. *Padgett,* 296 S.C. at 83, 370 S.E.2d at 875; *Kateman,* 335 S.C. at 278, 516 S.E.2d at 3. Here, the family court found Husband was not in contempt of court. We agree, as the record contains no court order upon which to base a contempt finding. Not only had no court previously ordered Husband to reimburse Wife for the deductions, the divorce agreement itself charged DFAS, not Husband, with the responsibility of making the payments to Wife.

Moreover, in our view the record presents no evidence indicating Husband intentionally claimed increased disability

in order to prevent Wife from receiving her share of his military retirement benefits. *See Price,* 325 S.C. at 383, 480 S.E.2d at 94 (reversing family court's finding of contempt on similar facts). In the absence of such evidence or a prior court order directing Husband to reimburse Wife, the family court did not abuse its discretion in declining to find Husband in contempt. *See Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997) ("An abuse of discretion occurs when there is an error of law or a factual conclusion which is without evidentiary support.").

### III.   Attorney Fees

In the conclusion to her brief, Wife requests reasonable attorney fees and costs. The question of attorney fees is not preserved for our review. *See* Rule 207(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of issues on appeal."); *Gamble v. International Paper Realty Corp. of South Carolina,* 323 S.C. 367 n. 1, 474 S.E.2d 438 n. 1 (1996) (same); *First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (issues not argued or supported by authority are deemed abandoned and will not be considered on appeal). Moreover, in light of our disposition of the merits of this appeal, attorney fees would not be warranted.

For the foregoing reasons, the decision of the family court judge is

**AFFIRMED.**

STILWELL and SHULER, JJ., concur.