379 S.C. 633 (2008)
666 S.E.2d 921
Ex parte Joe W. KENT, Appellant/Respondent.
Leroy E. Capps and Harriette Capps, Respondents,
v.
South Carolina Department of Transportation, Respondent/Appellant.
No. 4434.
Court of Appeals of South Carolina.
Submitted May 1, 2008.
Decided August 28, 2008.
*635 Charles E. Carpenter, Jr., and Carmen V. Ganjehsani, both of Columbia, for Appellant-Respondent.
William P. Hatfield, of Florence, for Respondents.
D. Malloy McEachin, of Florence, for Respondent-Appellants.
WILLIAMS, J.
In this case, the trial court granted a new trial and issued sanctions for contempt. We affirm in part and reverse in part.

FACTS
This case arises from a motor vehicle accident. A tractor trailer truck driven by Bobby Connor (Connor)[1] made a turn while on a detour road. While making the turn, Connor traversed into the opposing lane of travel. Leroy E. Capps and Harriette Capps (collectively the Capps) were traveling in the opposing lane when the tractor trailer collided with the Capps' vehicle. The Capps filed suit against Connor and the South Carolina Department of Transportation (the SCDOT).[2]
As a basis of their suit, the Capps alleged the SCDOT: (1) knowingly selected a route which could not safely accommodate tractor trailers because the tractor trailers would encroach *636 into the opposing lane of travel; (2) failed to place advance warning signs alerting oncoming motorists of this danger; and (3) failed to modify the detour route to make it safer or failed to choose a safer alternative route.
During the trial, the SCDOT attempted to assert Connor's superseding negligence as a defense. In support of this defense, the SCDOT retained the services of Joe Kent (Kent). Kent is an expert in accident reconstruction and highway engineering related to accidents. Kent testified that an accident report was important in forming the foundation for his opinions.
When asked what factors within the accident report he relied on in arriving at his conclusion, Kent responded, "The orientation of the vehicles and the motion of the vehicles. . . . There was also an estimated speed . . . of 45 [MPH] for Mr. Capps and five [MPH] for Mr. Conner. . . . I also noted (sic) that from this report that Mr. Conner was cited for failure to yield right of way." The Capps immediately moved for a mistrial, arguing evidence of whether Connor received a ticket was inadmissible. The trial court denied the Capps' motion for a mistrial but did issue a curative instruction to the jury. Additionally, the trial court issued contempt sanctions in the amount of $1,500 against Kent. Initially, the trial court ordered Kent to pay this amount to the Florence County Humane Society. Subsequently, the trial court determined that payment to the Humane Society did "not further the ends of justice" and ordered payment be made to the Capps' counsel.
The jury returned a verdict in favor of the SCDOT. The Capps moved for a new trial pursuant to Rule 59, SCRCP, and separately under the thirteenth juror doctrine. The Capps specifically asked the trial court to reconsider its denial of the Capps' motion for a mistrial. The trial court granted the Capps' motion for a new trial. Kent and the SCDOT appeal the trial court's rulings. We address each parties' argument in turn.

A. Kent's appeal
Kent argues the trial court committed reversible error when *637 it issued contempt sanctions against him. We agree.[3]
The determination of contempt ordinarily rests within the sound discretion of the trial judge. State v. Bevilacqua, 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App.1994). Contempt is an extreme measure and the power to find an individual in contempt is not to be lightly asserted. Id. at 128, 447 S.E.2d at 216. Contempt results from the willful disobedience of a court order and before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based. Id. at 129, 447 S.E.2d at 217. A willful act is an act "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say with bad purpose either to disobey or disregard the law." Id. (internal quotations omitted). If the primary purpose of the sanctions imposed is to preserve the court's authority and to punish for disobedience of its orders, the contempt is considered criminal. Id. at 128, 447 S.E.2d at 217. Conversely, if the purpose of the sanctions is to coerce obedience to a court order, the contempt is civil. Id. at 129, 447 S.E.2d at 217.
In the instant case, the trial court issued contempt sanctions upon Kent on the basis that Kent deliberately gave inadmissible testimony in the form of Connor's citation. In issuing contempt sanctions, the trial court reasoned that Kent had substantial and continuous involvement in court proceedings as an expert witness over a number of years and should have known that evidence regarding a citation was inadmissible. The following colloquy during the trial indicates the trial court made no inquiry to determine Kent's knowledge regarding the admissibility or inadmissibility of a citation.
Q: Did you . . . review . . . the accident report in regard to this case?
[Kent]: I did.

*638 Q: Did that . . . have any significance to you in your evaluation?
A: It does. It has basically a description of the vehicles. It has a description of the motions of the vehicles and also it helps clarify the pictures of the accident scene taken by the State Patrol right after that accident that I reviewed. And it reveals in the narrative portion
[Counsel for the Capps]: I'm going to object. That's hearsay, if your honor please.
[Counsel for the SCDOT]: Your honor, may I respond now?
The Court: Yes, sir.
[Counsel for the SCDOT]: Let me get the rule out but under the rule an expert is entitled to rely on hearsay.
The Court: There is a distinction between relying on it and publishing it counsel.
[Counsel for the Capps]: Plus there's a specific statute.
The Court: What says [sic] you? What say you to that?
[Counsel for the SCDOT]: Your honor I think he would be entitled to testify if he had figures regarding speed for instance. I think he would be able to rely on that and say that's what he relied on in regard toto a speed. I think he would be able to testify as to how he arrived at his opinion just as the plaintiff's expert testified relying on hearsay.
The Court: All right. Counsel, I'm going to overrule your objection and allow that. Again the basis of his opinion is for the jury to determine whether or not that opinion is credible or believable. The court will allow that. You may proceed [Counsel for the SCDOT].
[Counsel for the SCDOT]: Thank you, your honor.
Q: In . . . examining the accident report were there factors that you relied on in arriving at your conclusion in this case?
A: There were.
Q: All right, sir. And . . . what were those?
A: The orientation of the vehicles and the motion of the vehicles as described in the narrative portion and as shown in the diagram. There also was an estimated speed listed by the investigating officer of 45 miles per *639 hour for Mr. Capps and fives miles an hour for Mr. Conner who was driving the tractor trailer who pulled out onto Highway 51. I also noted thatfrom this report that Mr. Conner was cited for failure to yield right of way.
(emphasis added)
Based upon the testimony at trial and the evidence in the record, we find there is not sufficient evidence to suggest that Kent, in fact, knew the testimony was inadmissible or that he willfully disobeyed a court order. See Curlee v. Howle, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982) ("Contempt results from the willful disobedience of an order of the court, and before a person may be held in contempt, the record must be clear and specific as to the acts or conduct upon which such finding is based."); see also State v. Passmore, 363 S.C. 568, 571-72, 611 S.E.2d 273, 275 (Ct.App.2005) (applying the requirement of willfulness in the context of criminal contempt). Furthermore, there was no court order forbidding Kent's testimony. In fact, the trial court allowed Kent to testify after overruling the Capps' objection regarding Kent's ability to rely on the narrative portion of the accident report. Kent was not asked a question to which there was a sustained objection and thereafter answered without a ruling from the trial court. Rather, the trial court overruled the objection and allowed Kent to testify.
While we are mindful of the trial court's concern and recognize the possibility of such knowledge of inadmissible evidence by an individual who regularly appears in court, we nonetheless find the extent of such knowledge for the purposes of determining willfulness must be sufficiently established by the record prior to an imposition of a contempt sanction. The extent of Kent's knowledge was not established in the record and may not be established by speculation. Accordingly, we must confine our review to the record presented. Thus, we hold the trial court's decision to impose contempt sanctions upon Kent lacks evidentiary support and we reverse the sanction.[4] Having adjudicated Kent's appeal, we now turn our attention to the SCDOT's appeal.

*640 B. The SCDOT's appeal
The SCDOT appeals the trial court's grant of a new trial arguing the court misapplied the thirteenth juror doctrine and the court's application of the thirteenth juror doctrine was controlled by an error of law. We need not address this issue.
In the instant case, the trial court granted a new trial based on two separate grounds: (1) pursuant to Rule 59, SCRCP; and (2) pursuant to the court's authority under the thirteenth juror doctrine. On appeal, the SCDOT challenges only one of these grounds: the trial court's reliance on the thirteenth juror doctrine. Since the trial court granted a new trial based on Rule 59, SCRCP, and separately under the thirteenth juror doctrine, we must affirm the trial court's decision to grant a new trial on the basis of Rule 59, SCRCP, because that independent ground for a new trial was not also appealed. See Anderson v. Short, 323 S.C. 522, 525, 476 S.E.2d 475, 477 (1996) (holding when a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case).
Notwithstanding, even if we were to review the court's use of the thirteenth juror doctrine, we nonetheless would affirm since the court possesses broad, inherent authority to grant a new trial for any prejudicial errors committed during the trial as a matter of fundamental fairness. See Howard v. State Farm Mut. Auto. Ins. Co., 316 S.C. 445, 449, 450 S.E.2d 582, 584-85 (1994) (holding the court may order a *641 new trial based upon the erroneous admission of testimony when the record shows error and prejudice). Moreover, the court retains the inherent authority to reconsider its denial of the motion for a mistrial.

CONCLUSION
Accordingly, the trial court's decision is
AFFIRMED IN PART AND REVERSED IN PART.[5]
PIEPER, J., concurs.
THOMAS, J., concurring in part and dissenting in part by separate opinion:
I respectfully dissent. In my opinion the trial court's ruling should be affirmed in full since the record provides evidence supporting the trial court's issuance of civil contempt sanctions against Kent.
"A determination of contempt is a serious matter and should be imposed sparingly; whether it is or is not imposed is within the discretion of the trial judge, which will not be disturbed on appeal unless it is without evidentiary support." Haselwood v. Sullivan, 283 S.C. 29, 32-33, 320 S.E.2d 499, 501 (Ct.App. 1984). A decision regarding contempt should be reversed only if it lacks evidentiary support or the trial judge has abused his discretion. Stone v. Reddix-Smalls, 295 S.C. 514, 516, 369 S.E.2d 840, 840 (1988).
"The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings." Browning v. Browning, 366 S.C. 255, 262, 621 S.E.2d 389, 392 (Ct.App.2005). A court's ability to find someone in contempt "is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts; and consequently to the due administration of justice." In re Terry, 128 U.S. 289, 303, 9 S.Ct. 77, 32 L.Ed. 405 (1888) (citations omitted), quoted with approval in Miller v. Miller, 375 S.C. 443, 453, 652 S.E.2d 754, 759 (Ct.App.2007). Those who commit offenses calculated to obstruct, *642 degrade, and undermine the administration of justice are subject to the court's inherent authority to levy contempt, and this power cannot be abridged. State ex rel. McLeod v. Hite, 272 S.C. 303, 305, 251 S.E.2d 746, 747 (1979). Without the power to find individuals in contempt of court, "the administration of the law would be in continual danger of being thwarted by the lawless." Miller, 375 S.C. at 453-54, 652 S.E.2d at 759 (citing Terry, 128 U.S. at 303, 9 S.Ct. 77).
Contempt results from the willful disobedience of a court order. Lindsay v. Lindsay, 328 S.C. 329, 345, 491 S.E.2d 583, 592 (Ct.App.1997). A willful act is one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." Spartanburg County Dep't of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 874 (1988) (citing Black's Law Dictionary 1434 (5th ed.1979)). The determination of contempt ordinarily resides in the sound discretion of the trial judge. State v. Bevilacqua, 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App.1994). "A finding of contempt . . . must be reflected in a record that is `clear and specific as to the acts or conduct upon which such finding is based.'" Tirado v. Tirado, 339 S.C. 649, 654, 530 S.E.2d 128, 131 (Ct.App.2000) (quoting Curlee v. Howle, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982)).
The majority holds the record lacks evidence demonstrating Kent knew a traffic citation is inadmissible in a court of law. I disagree. The majority's finding disregards the courtroom experience Kent presented while being qualified as an expert witness. During his qualification as an expert witness, Kent explained he has testified "a couple of hundred" times in "the areas of accident reconstruction and roadway effect on vehicular accidents." Kent further explained he has evaluated accidents for twenty-two years and even formed his own engineering firm that engages in accident reconstruction.
The record also evinces the willfulness of Kent's utterance. Ignoring his prior courtroom experience, Kent was still aware of the inadmissibility of accident reports since immediately before he announced, "I also noted thatfrom this report that Mr. Conner was cited for failure to yield right of way," the *643 Capps' counsel made a hearsay objection to the narrative portion of the accident report being published to the jury and the parties argued about the parameters of Kent's testimony. In the ongoing discussion, the trial court noted "there is a distinction between relying on [the accident report] and publishing it [to the jury]." The Capps' counsel also mentioned that a statute prohibits publishing an accident report to the jury. Indeed, Kent displayed his familiarity with the rules of court by admitting he misspoke and stating he had never done that before. After Kent's statement and the ensuing objection, the jury was removed from the courtroom while the Capps' counsel argued for a mistrial. The attorney for SCDOT responded by stating, "I didn't know that was coming in at that time, your Honor."
The majority also disregards the trial court's extensive explanations to the jury regarding the contemptuous conduct and Kent's willfulness in disclosing Connor's citation to the jury. "[B]efore a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct.App.2001). The trial court patiently explained to the jury its belief Kent knew the comment was inappropriate and still deliberately mentioned the citation with the knowledge that "evidence of whether or not a citation was issued is just inadmissible in any civil trial." In assessing sanctions against Kent for civil contempt, the trial court explained Kent made a "leap far beyond what the court would ever allow in an intentional way from a witness who's testified many times . . . [and] would well know that evidentiary rule." The trial court also cited Kent's demeanor, which cannot be reviewed on appeal, as support for holding him in civil contempt.
The majority does not fully address whether the sanctions against Kent constituted civil or criminal contempt. I would find the sanctions were civil in nature. "The determination of whether contempt is criminal or civil depends upon the underlying purpose of the contempt ruling." Miller, 375 S.C. at 456, 652 S.E.2d at 761. "In contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both: when a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking *644 to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order." Hicks v. Feiock, 485 U.S. 624, 635, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). "If the sanction is a fine, it is remedial and civil if paid to the complainant even though the contemnor has no opportunity to purge himself of the fine." Miller, 375 S.C. at 457, 652 S.E.2d at 761 (citing Floyd v. Floyd, 365 S.C. 56, 75-76, 615 S.E.2d 465, 475-76 (Ct.App.2005)).
The trial court never referred to the sanctions as criminal contempt. To the contrary, the trial court made efforts to indicate the contempt was civil in its order denying reconsideration of the sanctions when it stated, "the Court has determined that payment to the Humane Society does not further the ends of justice in this case, and instead directs that the payment be made to Plaintiff's counsel, to be credited against the costs of making and prosecuting the motion for a new trial." See Hicks, at 631, 108 S.Ct. 1423 ("If it is for civil contempt the punishment is remedial, and for the benefit of the complainant."); Jarrell v. Petoseed Co., 331 S.C. 207, 209, 500 S.E.2d 793, 794 (Ct.App.1998) ("Civil contempt sanctions serve two functions: to coerce future compliance and to remedy past noncompliance."). In addition to compensating the Capps for Kent's wrongful conduct, the remedial sanction issued by the trial court also resulted in Kent's continued testimony without further mention of the citation issued to Connor.
In light of this court's standard of review, the support found in the record, and the clear explanations given by the trial court, I would affirm the trial court's order in full.
NOTES
[1] The Trial court's order spells Connor's name as "C-o-n-n-e-r" but the court reporter spells his last name as "C-o-n-n-e-r." We will use the former in the opinion except when we quote directly from the record.
[2] The Capps pursued a case against Connor in federal district court.
[3] The Capps contend this issue is not preserved for review; we disagree. The issue of whether the sanctions were proper was raised to and ruled upon by the trial court; thus, it is preserved for our review. Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding for an issue to be preserved for appeal it must have been raised to and ruled upon by the trial judge).
[4] The dissent characterizes the nature of the contempt involved as civil, rather than criminal. Although the trial judge never characterized the contempt as civil or criminal, the movant proceeded as if it were criminal contempt and filed a motion asking the trial court to "reconsider the criminal contempt order." The trial court ultimately issued an order denying reconsideration of the "sanction" imposed but modified its decision as to the payee of the monetary sanction. Arguably, modification of the sanction itself might impact upon its characterization, but the trial court ultimately never characterized its sanction as civil or criminal. While we would normally attempt to ascertain the type of contempt involved for the purposes of our review, we need not characterize the contempt herein in light of our reversal of the sanction since each type of contempt sanction, criminal or civil, requires a finding of willfulness. Therefore, even if we were to agree with the dissent that this proceeding involves civil contempt, we conclude the trial court nonetheless erred in imposing the sanction as the record fails to support a finding of willful conduct.
[5] We decide this case without oral arguments pursuant to Rule 215, SCACR.