21642

Jessica R. CURLEE, Respondent, v. Jerry A. HOWLE, Appellant.
(287 S. E. (2d) 115)

*Larry D. Estridge,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for appellant.*

*Ronald F. Barbare,* of *Lathan, Fayssoux, Smith & Barbare,* of Greenville, *for respondent.*

February 17, 1982.

HARWELL, Justice:

Appellant was found in contempt of court for failing to return his children to the respondent as required under a previous court order. As a result, he was sentenced to one year of imprisonment, suspended upon paying to the respondent $14,960.43, the expenses incurred by respondent and her family as a direct consequence of the appellant's contemptuous conduct. We affirm in part, and modify in part.

Appellant and respondent were divorced on December 26, 1973, in South Carolina with custody of the two minor children in respondent. Appellant and respondent have each remarried, and appellant presently resides in Reno, Nevada, where he practices psychiatry. A 1973 South Carolina court order increased the appellant's alimony and child support payments and provided the appellant with a three week summer visitation with the children in Reno, Nevada.

On June 9, 1979, the two children left for Nevada; they were to return to South Carolina on July 1, 1979, as agreed upon earlier by the parents and in accordance with the visitation privileges. However, the children were not returned to South Carolina, and on July 12, 1979, the respondent petitioned the family court for a Rule to Show Cause why appellant should not be held in contempt of court for failing to return the children at the end of the three weeks.

Although appellant did not personally appear at the Rule to Show Cause hearing on August 13, 1979, he was repre-

sented by his attorney. His attorney explained that he had retained the children beyond the agreed visitation period under the auspices of a Nevada family court order. The *Ex Parte* Order, which granted the appellant temporary custody of the children on July 2, 1979, was precipitated by appellant's filing a petition for temporary custody while the children were visiting him. Respondent testified that she and her husband and, later, her parents traveled to Nevada where they spent several weeks attempting to locate the children and to regain custody. Respondent also testified that she hired a private detective to locate the children and a Nevada attorney to petition a Nevada family court for return of the children. After a hearing on the merits on August 2, 1979, the Nevada court ordered that the children be returned to respondent and that the child custody matter be litigated in South Carolina rather than Nevada. (Appellant has appealed that order to the Nevada appellate court. That appeal is presently pending. However, the respondent was required to post a $20,000 bond with the Nevada court in the event appellant succeeded in his appeal). On August 15, 1979, a South Carolina family court held appellant in contempt of court but withheld sentencing for thirty days in order to grant appellant an opportunity to request a hearing and present evidence in mitigation of his sentence.

On October 1, 1979, at the requested hearing, appellant testified that he had petitioned in Nevada for the temporary custody order because he was fearful of his children's emotional and psychological conditions. Respondent, her husband and her parents offered evidence at the hearing of the various expenses which they incurred during or in connection with their visits in Nevada. Expenses incurred by respondent and her husband, which included air fare, lodging, attorney's fees, and detective's fees, totaled $12,658.79. The respondent's parents incurred expenses of $2,401.64.

On October 12, 1979, the family court judge sentenced appellant to one year imprisonment for contempt of court, provided that he be allowed to purge himself of contempt by the payment of $14,960.43 to respondent and her family.

First, appellant alleges that he was not in contempt of court for retaining the children in Nevada because he had a right to rely on his pending action and subsequent order of temporary custody from the Nevada family court. Nevertheless, a previous order from a South Carolina family court required that the children be returned to respondent at the expiration of the three weeks visit.[1]

The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice. *McLeod v. Hite*, 272 S. C. 303, 251 S. E. (2d) 746 (1979); *State v. Goff*, 228 S. C. 17, 88 S. E. (2d) 788 (1955). In the present case, the appellant willfully disregarded a previous South Carolina family court order. He obtained possession of the children solely under visitation privileges granted him under the South Carolina order. He knew that the order obligated him to return the children to the respondent in South Carolina at the end of the three weeks. The court did not find any justifiable explanation for his failure to comply at the end of the three week period. Contempt results from the willful disobedience of an order of the court, and before a person may be held in contempt, the record must be clear and specific as to the acts or conduct upon which such finding is based. *Edwards v. Edwards*, 254 S. C. 466, 176 S. E. (2d) 123 (1970); *Bigham v. Bigham*, 264 S. C. 101, 212 S. E. (2d) 594 (1975). The record clearly reflects that the appellant was held in contempt for disobeying the previous South Carolina family court order.

Appellant cites *Cannon v. Cannon*, 260 S. C. 204, 195 S. E. (2d) 176 (1973) for support of his argument that his conduct was not contemptuous. In *Cannon*, the former spouses had entered into a separation agreement in contemplation of the wife and children moving to Connecticut. The agreement gave the husband custody of the children in South Carolina for two months each summer. While in Connecticut to pick up the children, the husband was served with process in a

---

[1] It is noted that 28 U.S.C.A. § 1738A, effective July 1, 1981, now gives full faith and credit to child custody determinations.

divorce action instituted in Connecticut by the wife. Once the husband returned to South Carolina with the children, he petitioned the South Carolina court for divorce and custody while his wife's action in Connecticut was pending. This Court held that because the children were physically present in South Carolina when the action was commenced by the father, the South Carolina court acquired jurisdiction to determine the issue of custody. However, in that case, there was no prior *order* of any court; there was merely a separation agreement. In contrast, by a previous South Carolina order, appellant was required to return the children at the end of the three week visitation. Under these circumstances, the court did not err in holding appellant in contempt.[2]

Appellant next alleges that even if he is in contempt, his sentence was excessive. His sentence of one year imprisonment was suspended upon his paying the respondent's expenses incurred as a result of the contemptuous conduct. We conclude that under the circumstances, the conditional sentence of one year imprisonment was proper. An issue raised on appeal directly from the bench was not addressed by appellant in his brief or during his oral argument. However, because appellant generally excepted to the sentence as excessive, we consider it here. The issue is whether a judge may impose a conditional sentence of more than six months without allowing the contemnor a jury trial.

In *Bloom v. Illinois,* 391 U. S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), the Supreme Court held that prosecutions for serious *criminal* contempts are subject to the jury provisions of Art III, Section 2 of the Constitution, and of the Sixth Amendment, which is made binding upon the states by virtue of the due process clause of the Fourteenth Amendment. In *Codispoti v. Pennsylvania,* 418 U. S. 506, 94 S. Ct. 2689, 41 L. Ed. 2d 912 (1974) the Court held that defendants in state *criminal* trials who are committed to imprisonment of more than *6 months* are entitled to a jury trial.

---

[2] According to the Family Court Rules effective in 1979, appellant's proper procedure was to petition in the South Carolina family court for a change of custody. See Rule 15 of the Family Court Rules effective in 1979. However, since 1980, Family Court Rule 9 specifically gives the family court continuing jurisdiction for all subsequent proceedings, including change of custody hearings.

However, in 1966, a majority of the U. S. Supreme Court directly addressed the matter of a jury in proceedings for *civil* contempt. In *Shillitani v. U. S.*, 384 U. S. 364, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966), two petitioners had been sentenced to two years imprisonment for contempt of court with the proviso that they would be released upon answering questions put to them by a grand jury. Their contemptuous conduct consisted of not testifying before a grand jury after both had been given immunity. One demanded a jury trial, but the request was denied; on both two year conditional sentences were imposed by a judge without the aid of a jury. The Court held that the conditional nature of the sentences rendered each of the actions a civil contempt proceeding, for which indictment and jury trial are not constitutionally required. The character and purpose of the proceedings rendered them civil rather than criminal contempt proceedings. The conditional imprisonment was for the obvious purpose of compelling the two grand jury witnesses to obey the Court's orders to testify. Continuing, the Court stated that when petitioners carry the keys of prison in their own packets, the action is essentially a civil remedy designed for the benefit of *other* parties and has quite properly been exercised for centuries to secure compliance with judicial decrees. If the petitioners had chosen to obey the court's order, they would not have faced jail. In *Shillitani*, both the District Court and the Court of Appeals called the petitioners' conduct *criminal contempt*. But despite the fact both petitioners were ordered imprisoned for a definite period, their sentences were clearly intended to operate in a prospective manner to coerce, rather than to punish. As such, their sentences related to *civil* contempt. While any imprisonment has punitive and deterrent effects, it must be viewed as remedial if the Court conditions the release upon the contemnor's willingness to obey the Court's order. The *Shillitani* test to determine whether contempt is civil or criminal is: What does the Court primarily seek to accomplish by imposing the sentence? In *Shillitani*, it was to obtain answers to the grand jury questions. Footnote 5 of the opinion stated that had the contempt been criminal, it would have been characterized by the imposition of an *unconditional* sentence for punish-

ment or deterrence. The conditional nature of the imprisonment, based entirely upon the contemnor's continued defiance, justified holding civil contempt proceedings absent the safeguards of indictment and a jury.

However, the Court in *Shillitani* overturned the petitioners' two year conditional sentences because the justification for coercive imprisonment depended upon the ability of the contemnor to comply with the court's order. There the grand jury had been discharged so that the petitioners could not purge themselves of contempt by testifying before the grand jury.

Therefore, we must determine whether appellant's contempt was civil or criminal. If it was civil, his conditional sentence of one year without a right to jury trial is proper. If it was criminal, appellant had a constitutional right to a jury trial before a sentence of more than six months could be imposed. The Order and Rule to Show Cause was to show why appellant should not be held in contempt for not returning the children. However, when the contempt hearing was held, the children had already been returned pursuant to a Nevada court order. As a result of appellant's contemptuous conduct, respondent's custodial rights were violated. In addition, respondent had gone to considerable expense in recovering the children. Appellant was given a conditional sentence: spend a year in prison or pay the respondent's expenses that she incurred in enforcing the court's order. The purpose of the sentence was obviously to compel appellant to pay the expenses, not for punishment. Appellant does not contend that he is financially unable to reimburse the respondent for her expenses. The conditional nature of the imprisonment, based entirely upon appellant's refusal to pay respondent's expenses, justified holding the civil contempt proceeding without a jury trial.

Appellant was allowed to purge himself of his one year sentence by paying to respondent compensatory contempt in the amount of $14,960.43, $12,658.79 for her expenses and her husband's, and $2,301.64 for her parents' expenses.

■ Compensatory contempt is a money award for the plaintiff when the defendant has injured the plaintiff by violating a previous court order. The goal is to indemnify the plaintiff directly for harm the contemnor caused by breaching the injunction. Rendleman, Compensatory Contempt: Plaintiff's Remedy When a Defendant Violates an Injunction, 1980 Ill. L. F. 971. Courts utilize compensatory contempt to restore the plaintiff as nearly as possible to his original position. Therefore it is remedial.

We have recognized compensatory contempt in at least two cases. In Ex Parte Thurmond, 1 Bailey 605 (1830), we stated that when an individual right is directly involved in a contempt proceeding, the court has the power to order the contemnor to place the injured party in as good a situation as he would have been if the contempt had not been committed, or to suffer imprisonment. In *Lorick & Lowrance v. Motley*, 69 S. C. 567, 48 S. E. 614 (1904), we held that a contemnor may be required to pay damages suffered by reason of his contemptuous action or suffer imprisonment. The defendant was ordered to pay to the plaintiff the value of the trees he had destroyed in disregard of the court's order.

When . . . property of an individual is taken or destroyed in contempt of the court's order, those interested have a right to ask of the court its restoration or payment of its value at the hands of the offender, and the court requires such restoration as part of the punishment. 49 S. E. at page 615.

Compensatory contempt awards have been affirmed also by the United States Supreme Court.

Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is extended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss. . . .

*United States v. United Mine Workers of America*, 330 U. S. 258, 304-305, 67 S. Ct. 677, 701-702, 91 L. Ed. 884 (1947).

Therefore, the compensatory award should be limited to the complainant's actual loss. Included in the actual loss are the costs in defending and enforcing the court's order, including litigation costs and attorney's fees. The burden of showing what amount, if anything, the complainant is entitled to recover by way of compensation should be on the complainant. In the present case, respondent submitted a detailed documentation of all her expenses incurred as a result of appellant's contemptuous conduct. The family court judge found, and we agree, that these sums were reasonably and necessarily expended for the respondent and her husband to restore the children to their home. Thus the award of respondent's actual loss was proper.

In addition to reimbursing respondent for her expenses, appellant was also required to reimburse respondent's parents for their expenses. We conclude that respondent's parents are not entitled to a compensatory contempt award. First of all, it is not clear that these expenses were necessary as respondent's father testified that he accompanied his daughter solely to provide moral support and comfort. More importantly, compensatory contempt awards should be limited to the *complainant's* expenses only. Therefore, the award should not have been extended to respondent's parents.

We affirm the finding of contempt and appellant's conditional sentence of one year imprisonment. We affirm the compensatory award so far as it reimburses respondent for her and her husband's expenses, but modify the award to eliminate reimbursement for respondent's parents' expenses. In addition, we award respondent attorney's fees of $500.00 for the appeal.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.