THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Autumn LaDawn Davis, f/k/a Autumn LaDawn Young, Respondent,
 
 
 

v.

 
 
 
 Jimmy Bruce Young, Appellant.
 
 
 

Appeal from Orangeburg County
 William J. Wylie, Jr., Family Court Judge

Unpublished Opinion No. 2005-UP-396
Submitted May 1, 2005  Filed June 15, 2005

AFFIRMED

 
 
 
 Cynthia Bailey Berry, of Orangeburg, for Appellant.
 Thomas E. Elliott, Jr., of Columbia, for Respondent.
 
 
 

PER CURIAM:  Jimmy Bruce Young appeals the family courts order holding him in contempt of a restraining order.  We affirm.
FACTS
Autumn LaDawn Davis and Young were divorced on May 27, 2003.    In the final divorce decree, the family court ordered: each of the parties shall be, and [] is hereby, enjoined and restrained from harassing, abusing, bothering, threatening, or interfering with the other party and from entering upon or attempting to enter upon the other partys residence or place of employment.  
 In August of 2003, Davis filed a petition in support of the issuance of a rule to show cause requesting that the family court find Young in willful contempt for failure to pay alimony, failure to make automobile and insurance payments, and violation of the mutual restraining order.    Concerning the restraining order, Davis alleged Young had repeatedly driven to her home and walked about her property.    
The family court issued a rule to show cause, and Young was served.  Young responded by, among other things, denying a violation of the restraining order.  The contempt hearing was held on February 12, 2004.  Although Davis raised several issues in her original petition, the only issue adjudicated at the hearing was Youngs violation of the restraining order.  
At the hearing, Davis presented testimony and police incident reports in support of her claim that Young willfully violated the restraining order.  Davis testified that she had seen Young on numerous occasions at varying hours of the day, outside of her mobile home, at her back door, and parked in the mobile home park driveway, both alone and with others.  Specifically, Davis stated that Young showed up at her house on June 6, 2003, and tried to get in through the front door.  Davis also testified that, on June 9, 2003, Young pulled into her mothers front yard (next door to Daviss residence), pointed at Davis, made the shape of a gun with his hand, and then drove away.  On June 19, 2003, Young entered the mobile home park and kept watch on her from a car.  Another resident of the mobile home park, Emily Finley, corroborated Daviss testimony.  Finley testified she saw Young at the mobile home park on at least two occasions, and particularly remembered seeing Young and his brother sitting in a red truck watching Daviss mobile home.    
By a bench order dated February 12, 2004, the family court held Young in willful contempt of the restraining order, sentenced him to three months in jail, suspended upon 30 days service, and ordered Young to pay Davis $1,000 in attorneys fees.  Young began serving his sentence immediately following the hearing.  On March 3, 2004, the family court issued a formal order in which Youngs contempt was characterized as civil.  This appeal followed.    
STANDARD OF REVIEW
In appeals from the family court, this court has jurisdiction to find facts in accordance with our own view of the preponderance of the evidence. Murdock v. Murdock, 338 S.C. 322, 328, 526 S.E.2d 241, 244-45 (Ct. App. 1999). However, a finding of contempt should not be reversed on appeal unless it is without evidentiary support or amounts to an abuse of discretion. Stone v. Reddix-Smalls, 295 S.C. 514, 516, 369 S.E.2d 840, 840 (1988).  
LAW/ANALYSIS
In the final written order, the family court referred to Youngs contempt as civil in nature although the sanction, a definite period of incarceration, is indisputably indicative of criminal contempt.  No one argues on appeal that the contempt sentence was civil in nature.  Because the family courts March 3, 2004, order erroneously characterizes the contempt as civil, Young argues this court should reverse the family court.  We disagree.
Contempt results from the willful disobedience of an order of the court, and before a court may hold a person in contempt, the record must clearly and specifically demonstrate the acts or conduct upon which such a finding is based.  Curlee v. Howle, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982).  A willful act is one done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say with bad purpose either to disobey or disregard the law.  State v. Bevilacqua, 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct. App. 1994) (quoting Spartanburg County Dept of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 874 (1988)).  Civil contempt must be proved by clear and convincing evidence. Poston v. Poston, 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998).  In a criminal contempt proceeding, the burden of proof is beyond a reasonable doubt. Id.  The determination of contempt ordinarily resides in the sound discretion of the trial judge. Bevilacqua, 316 S.C. at 129, 447 S.E.2d at 217.
The determining factor in resolving whether contempt is civil or criminal is the purpose for which the power is exercised, including the nature of the relief and the purpose for which the sentence is imposed.  Poston, 331 S.C. at 111, 502 S.E.2d at 88.
  The purpose of civil contempt is to coerce the defendant to do the thing required by the order for the benefit of the complainant.  Id. (quoting Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911)).  The sanctions for civil contempt are conditioned on compliance with the courts order.  Poston, 331 S.C. at 112, 502 S.E.2d at 89.  The conditional nature of the punishment allows the contemnor to discharge himself of the sentence by doing what he had previously refused to do.  Id. (quoting Hicks v. Feiock, 485 U.S. 624, 633 (1988)).  
The primary purposes of criminal contempt are to preserve the courts authority and to punish for disobedience of its orders.  Poston, 331 S.C. at 111, 502 S.E.2d at 88.  A penalty for criminal contempt is unconditional and punitive in nature.  Id.  The contemnor has no power to undo or remedy what has been done and cannot shorten the term by an affirmative act.  Id. at 111-12, 502 S.E.2d at 88-89.  
Here, the family courts sanction was clearly criminal in nature.  Young was ordered to serve three months, suspended upon thirty days service, and had no ability to purge himself of the sentence.  The judges comments from the benchand resulting bench orderestablish that the purpose of the contempt sentence was to punish Young for his violation of the restraining order.  The family court judge stated: 

 weighing all of the evidence that she [Davis] has presented, including that of her witness, I find that he was in violation of a court order on at least the occasion when the red truck was observed there by the eyewitness who testified . . . and I believe places him there in violation of the court order.  

That the subsequent order of March 3, 2004, contained language erroneously characterizing the contempt as civil in nature does not change the nature of the contempt itself, which was clearly punitive.[1]  
We are firmly convinced the family court judge applied the correct burden of proofbeyond a reasonable doubt.  This is especially so when we consider the judges comments from the bench at the conclusion of the February 12, 2004, hearing.  Moreover, our review of the record indicates Davis presented sufficient evidence to support a finding Young was guiltybeyond a reasonable doubtof willfully violating the restraining order.  Davis testified that she had seen Young on numerous occasions outside of her mobile home, at her back door, and parked in the mobile home park driveway.  Her neighbor, Emily Finley, testified she saw Young, who she recognized from a previous meeting, at the mobile home park several times.  Finley distinctly recalled seeing Young and his brother sitting in a red truck watching Daviss mobile home.  The family court judge found this evidence credible, and we concur.  Although Young denied the general allegations, he admitted his brother owns a red truck.  Based on his observation of the witnesses, the family court judge found that the testimony of Davis and Finley was credible, whereas Youngs testimony that he did not violate the restraining order was not credible.  While we acknowledge the erroneous reference to the finding of civil contempt in the March 3, 2004, order, we find no basis for reversal, for Young was not legally prejudiced by this error.
CONCLUSION
Although the family court incorrectly characterized Youngs contempt as civil in the March 3, 2004, order, we find this mistake does not constitute reversible error.  The sanction for the contempt was criminal in nature, and ample evidence exists on the record to support a finding of criminal contempt.  Therefore, the order of the family court is 
AFFIRMED. 
GOOLSBY, HUFF and KITTREDGE, JJ., concur.

[1] As noted above, neither party to this appeal argues the contempt sentence was actually civil in nature.  Indeed, at the time the family court issued its March 3, 2004, written order, Young did not see the need to petition the family court for reconsideration or clarification of the discrepancy he now claims warrants a finding of reversible error.