# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Kari Lynn Bristol F/K/A Kari Lynn Lipnevicius,
Respondent,

v.

Geoffrey M. Lipnevicius, Appellant.

Appellate Case No. 2022-001507

———————

Appeal From Richland County
Monét S. Pincus, Family Court Judge

———————

Opinion No. 6085
Heard March 5, 2024 – Filed August 21, 2024

———————

## AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

———————

Rebecca Brown West, of Harling & West, LLC, of
Lexington, and David C. Shea, of Shea & Barron, LLC,
of Columbia, for Appellant.

Peter George Currence, of McDougall, Self, Currence &
McLeod, LLP, of Columbia, for Respondent.

———————

**VINSON, J.:** Geoffrey M. Lipnevicius (Father) appeals the family court's order dismissing as moot his counterclaim for attorney's fees made in response to Kari Bristol's (Mother's) action for modification of visitation, his four pending contempt actions, and his request to register an August 2018 foreign order for enforcement. Father argues the family court erred by finding these issues were rendered moot on the ground that the child who was the subject of the underlying modification action

turned eighteen before the court was able to hold a final hearing on the modification and contempt actions. We affirm in part and reverse and remand in part.

**FACTS**

Mother and Father divorced in Michigan in 2007. At the time of the parties' divorce, Father resided in Ohio and Mother and the parties' minor son (Son) lived in Michigan. In 2011, Mother told Father she was moving to South Carolina with Son, and Father initiated an action in Michigan. On November 4, 2013, a Michigan circuit court judge issued a stipulated order modifying the judgment of divorce, which altered certain provisions of the 2007 order and permitted Mother to change Son's domicile to South Carolina. This order also included a visitation schedule, providing Father would have visitation with Son in Ohio nine times per year, including thirty-eight consecutive days during summer break.

Mother filed an action in Michigan on July 9, 2018, requesting that the Michigan circuit court transfer jurisdiction to South Carolina, or, in the alternative, modify parenting time. Before the Michigan circuit court issued a written order ruling upon the action, Mother filed a summons and complaint in South Carolina on July 25, 2018, seeking modification of parenting time and an order domesticating and registering the 2007 Michigan judgment of divorce and 2013 stipulated order modifying the judgment of divorce. As to her request to modify parenting time, Mother requested that visitation take place temporarily in South Carolina and that Son not travel to Ohio for visitation until he was comfortable with visitation taking place in Ohio. Mother alleged it was emotionally and physically difficult for Son to travel to Ohio for visitation. Mother additionally requested the family court exercise emergency jurisdiction pursuant to section 63-15-336 of the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA)[1] and requested the court appoint a guardian ad litem and award attorney's fees, costs, and suit money. The South Carolina family court accepted emergency jurisdiction on the same day.

On August 14, 2018, the Michigan circuit court issued an order denying Mother's requests to transfer jurisdiction to South Carolina and modify Father's parenting

---

[1] *See* S.C. Code. Ann. § 63-15-336(A) (2010) ("A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.").

time (the Michigan visitation order). It issued a second order contemporaneously, awarding Father seventy-seven days of makeup visitation with Son and requiring Mother to pay Father $1,500 in attorney's fees and $4,024.50 for reimbursement of the cost of eight airline tickets (the Michigan contempt order) (collectively, the 2018 Michigan orders).

Father moved to dismiss Mother's South Carolina action and filed an answer and counterclaim seeking modification of custody and visitation and attorney's fees and costs. Pursuant to Father's request, the family court held a telephone conference with the Michigan circuit court judge regarding jurisdiction on September 19, 2018. On December 3, 2018, the family court issued a supplemental order determining the Michigan circuit court relinquished jurisdiction, the South Carolina family court properly accepted emergency jurisdiction by order dated July 25, 2018, and South Carolina had jurisdiction as a matter of law pursuant to section 63-15-334 of the UCCJEA.[2] The family court further ruled South Carolina would retain jurisdiction as exercised on an emergency basis and determine all issues regarding the registration and enforceability of the Michigan contempt order.

Father filed his amended answer and counterclaim on September 21, 2018. In addition to his prior counterclaims, Father sought registration and enforcement of the 2018 Michigan orders. He additionally filed an application and affidavit for registration of an out-of-state child custody order on February 21, 2019, seeking to register the 2018 Michigan orders and citing section 63-15-358(A) of the UCCJEA.[3] On February 7, 2020, he requested a hearing on the matter.

Following a December 19, 2018 temporary hearing, the family court issued a temporary order on February 13, 2019, stating it would keep the status quo of the July 25, 2018 order, with Father's visitation to take place in South Carolina until the guardian ad litem investigated the matter.

On June 4, 2019, the family court heard Father's motion for supplemental pendente lite relief. On June 18, 2019, the family court issued an order holding Father was to have parenting time in the summer of 2019 from June 19 through July 3, July

[2] *See* S.C. Code Ann. § 63-15-334 (2010) (setting forth the narrow circumstances under which a court of this state may modify a child custody determination made by a court of another state).
[3] *See* S.C. Code Ann. § 63-15-358(A) (2010) ("A child custody determination issued by a court of another state may be registered in this State, with or without a simultaneous request for enforcement . . . .").

12–27, and August 3–14.  It did not set forth a specific visitation schedule for the school year but instructed the parties to follow the parenting schedule as set forth in the Michigan visitation order with respect to Thanksgiving, Christmas, and spring break.

Between July 16, 2019, and May 11, 2020, Father filed six contempt actions against Mother for violations of the June 18, 2019 order.  Father withdrew one of these actions and the family court issued rules to show cause in the remaining five actions.  The family court ruled on the merits of only one of the contempt actions.

In that action, the family court found Mother in willful contempt of the June 18, 2019 order but expressed its reluctance in doing so.  The family court reserved the issue of Father's request for attorney's fees for determination at the final hearing.  However, in October 2022, the parties consented to the family court ruling on the issue of attorney's fees and costs; it awarded Father $3,390 in attorney's fees and costs as compensatory damages.

Son turned eighteen in March 2021.  The family court held a hearing to determine whether it still possessed jurisdiction over the action.  On April 26, 2022, the family court issued the order on appeal, dismissing the modification action as moot.  The family court held Son's emancipation mooted Mother's claims for registration of the 2007 and 2013 Michigan orders and modification of parenting time as well as Father's claims for modification of custody and visitation.  The family court held Father's request to register and enforce the 2018 Michigan orders was also moot.  The family court stated that even if the Michigan court had jurisdiction when it entered the 2018 Michigan orders, the award of attorney's fees in the order was a money judgment and the family court did not have jurisdiction to enforce such a judgment from another state.

The family court additionally dismissed the four pending rules to show cause issued December 19, 2020; May 13, 2020; September 26, 2019; and July 16, 2019.  The family court concluded that because the subject matter of this case was moot, and the court therefore could not issue a final order on the merits as to any child-related issue, all of the family court's interim or temporary orders issued in this case had no legal effect and were no longer enforceable.  The family court reasoned that when an action becomes moot because the subject child turns eighteen, the temporary orders issued in such a case could not survive the dismissal of the underlying action.  The family court stated it therefore had no power to grant Father any effectual relief.  The family court further rejected Father's argument that even if the court could not enforce the June 18, 2019 order, it could award

compensatory damages for Mother's violations.  The family court reasoned Father's contempt actions showed he desired compliance with the temporary visitation orders and his requested relief was to compel such compliance—relief the family court could not give.

The family court additionally dismissed Father's claim for attorney's fees and costs, finding such claim did not survive because the underlying modification action was dismissed as moot.  The family court stated, "[A] mooted action—which presents no case or controversy—falls outside the . . . jurisdiction of this court, and therefore the court declines to consider the only cause of action remaining in this case, that of attorney's fees and costs."  The family court reasoned that a claim for attorney's fees in a modification action was not an independent claim but was instead incidental to the claim for modification.  The family court concluded it did not have jurisdiction over such claim when it could not rule on the merits of the underlying modification action.

Finally, the family court held the guardian ad litem was entitled to be paid for the fees incurred up to Son's eighteenth birthday so long as the fees were within the court-ordered cap of $10,000.  The family court reasoned that "[u]nlike an award of attorney's fees and costs, which is ultimately decided at the merits hearing, the [g]uardian's fees . . . were already set by the court up to a cap, based on the applicable statutory factors[4] using facts existing at the time."  In addition, the family court had already ordered that the parties would equally divide the guardian's fees and costs.

Father filed a motion to reconsider the April 2022 order, and the family court denied the motion.[5]  This appeal followed.

---

[4] *See* S.C. Code Ann. § 63-3-850(A) (2010) ("At the time of appointment of a guardian ad litem, the family court judge must set forth the method and rate of compensation for the guardian ad litem, including an initial authorization of a fee based on the facts of the case."); S.C. Code Ann. § 63-3-850(B) (2010) ("A guardian appointed by the court is entitled to reasonable compensation, subject to the review and approval of the court.  In determining the reasonableness of the fees and costs, the court must take into account: (1) the complexity of the issues before the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay fees and costs; and (6) any other factors the court considers necessary.").

[5] However, the family court did correct a minor typographical error in the order.

**ISSUES ON APPEAL**

I. Did the family court err by concluding Father's counterclaim for attorney's fees incurred in the child visitation modification case did not survive Son's emancipation?

II. Did the family court err by concluding it lacked jurisdiction to enforce the June 18, 2019 temporary order for visitation when Son emancipated prior to the contempt actions being heard?

III. Did the family court err by concluding it lacked jurisdiction to register and enforce a foreign order awarding makeup visitation, attorney's fees, and cost reimbursement after Son emancipated?

**STANDARD OF REVIEW**

"On appeal from the family court, the appellate court reviews factual and legal issues de novo." *Taylor v. Taylor*, 434 S.C. 307, 315, 863 S.E.2d 335, 339 (Ct. App. 2021).

**ANALYSIS**

**I. Attorney's Fees in Modification Action**

Father argues the family court had jurisdiction of the issue of attorney's fees notwithstanding Son's emancipation. We disagree.

"Attorney['s] fees are not ordinarily recoverable unless authorized by contract or statute." *S.C. Dep't of Soc. Servs. v. Hyatt*, 277 S.C. 152, 153, 283 S.E.2d 445, 446 (1981).

> The family court has exclusive jurisdiction:
> . . . .
>
> . . . to hear and determine an action where either party in his or her complaint, answer, counterclaim, or motion for pendente lite relief prays for the allowance of suit money pendente lite and permanently. In this action the court shall allow a reasonable sum for the claim if it appears well-founded. *Suit money, including attorney's fees, may*

> *be assessed for or against a party to an action brought in
> or subject to the jurisdiction of the family court.*

S.C. Code Ann. § 63-3-530(A)(38) (2010 & Supp. 2023) (emphasis added).

> In determining whether an attorney's fee should be
> awarded, the following factors should be considered:
>
> (1) the party's ability to pay his/her own attorney's fee;
> (2) beneficial results obtained by the attorney;
> (3) the parties' respective financial conditions;
> (4) effect of the attorney's fee on each party's standard of
> living.

*E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992); *see also Miteva v. Robinson*, 418 S.C. 447, 465, 792 S.E.2d 920, 930 (Ct. App. 2016) ("[T]he beneficial results factor is only one of several factors to consider in deciding whether or not to award attorney's fees.").

"Before any action can be maintained, there must exist a justiciable controversy." *Byrd v. Irmo High Sch.*, 321 S.C. 426, 430, 468 S.E.2d 861, 864 (1996). "A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute or difference of a contingent, hypothetical[,] or abstract character." *Id.* at 430-31, 468 S.E.2d at 864. "A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court." *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006).

We hold the family court did not err by dismissing Father's claim for attorney's fees. Father argues the case of *Holcombe v. Hardee* supports his position that Son's emancipation did not warrant dismissal of his claim for attorney's fees. 304 S.C. 522, 405 S.E.2d 821 (1991). In *Holcombe*, our supreme court held the father's argument that the family court erred by refusing to require the mother to pay child support was not moot even though the child had reached the age of eighteen because "a question still remain[ed] as to whether the father should have received child support before [the child] attained age eighteen." *Id.* at 524, 405 S.E.2d at 822. Father argues the analysis in *Holcombe* is no different than the attorney's fees issue in this case because both parties' claims for fees attached before Son emancipated. We find *Holcombe* does not support Father's position. In *Holcombe*,

the court found the substantive issue of child support was not moot. *Id.* Here, however, the parties agree the substantive issue of visitation modification is moot. The statutory language that "attorney's fees[] may be assessed for or against a party to an action *brought in or subject to the jurisdiction of the family court*" indicates a claim for attorney's fees is not an independent action but instead requires a preexisting cause of action within the family court's jurisdiction. § 63-3-530(A)(38) (emphasis added); *see Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."). Thus, we conclude a claim for attorney's fees is derivative of the substantive claim before the family court and is therefore not an independent cause of action. We hold that because the substantive issue here is moot, Father's derivative claim for attorney's fees is likewise moot.

Father next argues our supreme court has permitted a claim for attorney's fees to survive a plaintiff's Rule 41(a)(2), SCRCP,[6] motion for voluntary nonsuit and cites to *Bowen & Smoot v. Plumlee*, 301 S.C. 262, 391 S.E.2d 558 (1990). We hold this case is distinguishable. In *Bowen & Smoot*, our supreme court took the extraordinary action of considering the denial of a Rule 12(b)(6), SCRCP, motion to dismiss a law firm's action for attorney's fees when it brought the action against its former client's children. 301 S.C. at 264-65, 391 S.E.2d at 559. In that case, the attorneys who previously represented a mother in several domestic and bankruptcy actions filed a lawsuit seeking attorney's fees from the mother's children on the ground that the children benefitted from the attorneys' services because they received a judgment for child support. *Id.* at 264, 391 S.E.2d at 559. Our supreme court held,

> Although the denial of a 12(b)(6) motion is not immediately appealable, we feel compelled to state that an attorney may not maintain an action for attorney's fees against his client's children on the theory that they benefitted from a judgment awarding child support. Child support is awarded for the support necessary for the health and well being of the child. It is not proper for

---

[6] *See* Rule 41(a)(2), SCRCP ("Except as provided in [Rule 41(a)](1)[, SCRCP,] . . . an action shall not be dismissed at the plaintiff's instance save upon order of the court . . . . If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.").

an attorney to attempt to take part of this support to satisfy attorney's fees incurred by the mother of the children.

*Id.* at 265, 391 S.E.2d at 559 (citation omitted). It concluded the circuit court did not err by dismissing the entire action without prejudice when the attorneys moved for a voluntary dismissal pursuant to Rule 41(a)(2), but nevertheless reversed the circuit court's denial of the children's request for attorney's fees. *Id.* at 266, 391 S.E.2d at 560. In doing so, the court found "that the [c]hildren were entitled to an award for having to defend against this meritless claim." *Id.* We conclude this case is not analogous to the situation presented in *Bowen & Smoot*. First, although our supreme court found the children were entitled to an award of attorney's fees even though it found the circuit court did not err in dismissing the action pursuant to Rule 41(a)(2), the opinion did not specify whether the children's request for attorney's fees was made as a counterclaim or hold that such a claim survived the voluntary nonsuit as an independent action. Second, this case involves a moot issue rather than a voluntary nonsuit under Rule 41(a)(2).[7] Thus, we find *Bowen & Smoot* is distinguishable from this case.

Further, litigating the issue of attorney's fees would not promote judicial economy because it would require the family court to consider the merits of a moot issue. *See Byrd*, 321 S.C. at 430, 468 S.E.2d at 864 ("Before any action can be maintained, there must exist a justiciable controversy."); *id.* at 430-31, 468 S.E.2d at 864 ("A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute or difference of a contingent, hypothetical or abstract character."); *see also E.D.M.*, 307 S.C. at 476-77, 415 S.E.2d at 816 (stating that in deciding whether to assess attorney's fees against a party, the family court should consider, among other factors, the beneficial results obtained by the attorney). The family court cannot consider the beneficial results obtained by the attorney without also considering and deciding the merits of the underlying claim for modification, which the parties agree is moot. In fact, Father acknowledges the family court would still need to hear

---

[7] We hold Father's additional argument that the dismissal of the case as moot is analogous to a voluntary dismissal under Rule 41, SCRCP, is not preserved for appellate review because Father did not raise this argument to the family court; rather, he raised it for the first time on appeal. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

evidence related to Son and the merits of Mother's complaint to rule on Father's request for attorney's fees.  Even if we were to equate a voluntary nonsuit to emancipation, we cannot conclude Mother's action is patently meritless as was the case in *Bowen & Smoot*.  Thus, to determine whether Father is entitled to attorney's fees, the family court would have to hold a potentially multiple-day hearing on the merits of a moot issue.  Not only would this result in the parties incurring additional attorney's fees, but requiring the court to consider a moot issue would not promote the interests of judicial economy.  *See Byrd*, 321 S.C. at 430-31, 468 S.E.2d at 864 ("A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute or difference of a contingent, hypothetical or abstract character.").

Father additionally contends, by way of analogy, that the court's determination that the guardian ad litem was entitled to fees conflicted with its dismissal of his claim for attorney's fees.[8]  We disagree.  Unlike the analysis the family court must engage in when awarding attorney's fees, the court sets the guardian's fees ahead of time as provided by statute and the award of guardian ad litem fees does not depend upon the outcome of a case.  *See* § 63-3-850(A) ("At the time of appointment of a guardian ad litem, the family court judge must set forth the method and rate of compensation for the guardian ad litem, including an initial authorization of a fee based on the facts of the case."); § 63-3-850(B) ("A guardian appointed by the court is entitled to reasonable compensation, subject to the review and approval of the court.  In determining the reasonableness of the fees and costs, the court must take into account: (1) the complexity of the issues before the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay fees and costs; and (6) any other factors the court considers necessary.").  Accordingly, we reject Father's argument that the family court's treatment of the guardian ad litem fees was incongruous with its ruling on the issue of attorney's fees.

Father next argues this case falls within two exceptions to mootness.  Specifically, he contends the public importance exception applies and that the issue is capable of repetition yet evading review.  We hold neither exception applies.

We hold the public importance exception to mootness does not apply.  *See Sloan v. Greenville County*, 361 S.C. 568, 570, 606 S.E.2d 464, 465-66 (2004) ("This Court

---

[8] Neither party challenged the family court's decision finding the guardian was entitled to fees and requiring that the parties to pay such fees on a fifty-fifty basis.

has recognized a 'public importance' exception to mootness holding that 'an appellate court may decide questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest.'" (quoting *Curtis v. State*, 345 S.C. 557, 568, 549 S.E.2d 591, 596 (2001))); *see also id.* at 571-72, 606 S.E.2d at 466 (holding this court erred in reversing the circuit court's dismissal of the suit as moot when even assuming the case presented a matter of important public interest, the questions posed did not involve matters of imperative and manifest urgency). This case involves a private action for modification of visitation and does not involve a state agency or affect the public generally. Thus, we hold the public importance exception does not apply because this case does not involve matters of important public interest.

Next, we hold the underlying issue of visitation modification is not an issue that is capable of repetition, yet evading review. "In evaluating whether a moot issue is capable of repetition, yet evading review the [appellate c]ourt does not require that the complaining party be subject to the action again. However, the action must be one which will truly evade review." *Friends of Hunley, Inc.*, 369 S.C. at 27, 630 S.E.2d at 478 (citation omitted); *id.* (holding although the "current situation [wa]s capable of repetition, it [was] not evad[ing] review"); *see also Roe v. Wade*, 410 U.S. 113, 125 (1973) ("[W]hen, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. . . . Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.'" (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911))), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Here, Father raises valid concerns about the lack of court time available for a multiple-day contested merits hearing and the accompanying likelihood that litigants will face a lengthy delay. Notwithstanding such delay, however, many custody and visitation modification actions will still achieve completion before the subject child or children reach the age of majority. Thus, we hold this exception to mootness does not apply.

Finally, Father asserts the family court erroneously relied upon *Louthian & Merritt, P.A. v. Davis* in holding Son's emancipation abated Father's claim for attorney's fees because his claim for attorney's fees was "personal" to him and could not be maintained as an independent claim. 272 S.C. 330, 251 S.E.2d 757 (1979). The family court found the facts of *Louthian & Merritt* differed from this

case in that, here, neither party died. *See id.* at 333, 251 S.E.2d at 759 (holding a wife's claim for attorney's fees in a divorce action was incidental to the divorce action and therefore "purely personal" and was abated with the divorce action when she died before the entry of a final decree). Nevertheless, the family court analogized this case to *Louthian & Merritt* when it found Father's claim for attorney's fees was personal to him and thus was abated when the modification action became moot. Because our conclusion that Father cannot maintain his claim for attorney's fees as an independent action is dispositive of this issue, we decline to address the family court's conclusion that his claim for attorney's fees was personal to him and therefore was abated when the case became moot. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address an appellant's remaining issues when the disposition of a prior issue is dispositive).

For the foregoing reasons, we hold the family court did not err by holding that Son's emancipation rendered Father's counterclaim for attorney's fees in the underlying visitation modification action moot.

## II. Contempt Actions

Father next argues the family court erred in holding Son's emancipation divested it of jurisdiction to hear Father's four pending contempt actions. Father argues Son's age affects the contempt actions only in that the family court lacked jurisdiction to grant one remedy that Father requested, which was for makeup visitation. Father argued the family court could still award attorney's fees and additional reimbursements under a compensatory contempt theory, regardless of Son's age. We agree.

"The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Curlee v. Howle*, 277 S.C. 377, 382, 287 S.E.2d 915, 917 (1982); *see also* S.C. Code Ann. § 63-3-620 (Supp. 2023) ("An adult who wil[l]fully violates, neglects, or refuses to obey or perform a lawful order of the court, or who violates any provision of this chapter, may be proceeded against for contempt of court.").

"Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses

sustained." *Curlee*, 277 S.C. at 386, 287 S.E.2d at 920 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304-05 (1947)). "Courts, by exercising their contempt power, can award attorney's fees under a compensatory contempt theory." *Miller v. Miller*, 375 S.C. 443, 463, 652 S.E.2d 754, 764 (Ct. App. 2007). "Compensatory contempt seeks to reimburse the party for the costs it incurs in forcing the non-complying party to obey the court's orders." *Id.* "In a civil contempt proceeding, a contemnor may be required to reimburse a complainant for the costs he incurred in enforcing the court's prior order, including reasonable attorney's fees. The award of attorney's fees is not a punishment but an indemnification to the party who instituted the contempt proceeding." *Id.* (quoting *Poston v. Poston*, 331 S.C. 106, 114, 502 S.E.2d 86, 90 (1998)). "Courts u[se] compensatory contempt to restore the plaintiff as nearly as possible to his original position. Therefore it is remedial." *Curlee*, 277 S.C. at 386, 287 S.E.2d at 919. "[T]he compensatory award should be limited to the complainant's actual loss. Included in the actual loss are the costs in defending and enforcing the court's order, including litigation costs and attorney's fees." *Id.* at 387, 287 S.E.2d at 920.

We hold Father's pending contempt actions were not moot because even though the family court could no longer order Mother to comply with visitation due to Son's emancipation, it could still provide Father relief in the form of compensatory contempt were he to prevail on the merits.[9] *See Friends of Hunley, Inc.*, 369 S.C. at 26, 630 S.E.2d at 477 ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court."). For example, in *Curlee*, our supreme court upheld the family court's ruling holding the father in contempt for failing to return the children to the mother at the end of a three-week visitation period. 277 S.C. at 380-81, 287 S.E.2d at 916-17. In *Curlee*, by the time the family court held the rule to show cause hearing, the father had already returned the children to the mother and therefore the family court could not order relief in the form of requiring the father to comply with its prior visitation order by returning the children to the mother. *See id.* Instead, the family court sentenced the father to one year's imprisonment for contempt of court, with the opportunity to purge himself of contempt by paying the mother's expenses incurred in her attempts to find and recover the children in

---

[9] Although Father did not use the term "compensatory contempt" in his four outstanding contempt actions, Father did request "attorney's fees and costs associated with [his m]otion and [r]ule concerning [Mother's] violations." *See Miller*, 375 S.C. at 463, 652 S.E.2d at 764 ("Courts, by exercising their contempt power, can award attorney's fees under a compensatory contempt theory.").

Nevada, including lodging, attorney's fees, and detective's fees. *Id.* at 381, 287 S.E.2d at 917. Our supreme court affirmed this award to the mother as a form of compensatory contempt for the father's violation of the mother's custodial rights. *Id.* at 386-87, 287 S.E.2d at 919-20. Similarly, here, even though the family court can no longer require Mother to comply with the visitation requirements set forth in the June 18, 2019 order, it still has the power to hold her in contempt for prior violations of the order and can award relief in the form of compensatory contempt. Thus, we hold *Curlee* supports a conclusion that Father's contempt actions are not moot even though Son emancipated before the family court could issue a final ruling on such actions. We further conclude the temporary nature of the June 18, 2019 order does not prevent the family court from exercising its contempt powers to enforce it because no final hearing on the merits was held in this case so as to displace such temporary order. *See, e.g.*, *Miller*, 375 S.C. at 448, 652 S.E.2d at 756 (considering an appeal from the family court's order that held appellant in contempt for failing to comply with a temporary order).

Further, we hold the *Family Court Benchmark*, S.C. Sup. Ct. Admin. Order dated July 24, 2020, does not apply here. In concluding it could no longer enforce the June 18, 2019 order after Son emancipated, the family court relied, in part, on the Family Court Benchmark Administrative Order. This order provides that a domestic relations case may be dismissed without prejudice if the clerk of court does not receive a written request for a final hearing within 365 days of the date the case was filed. *Id.* It further provides that if an action is dismissed for this reason, "any existing orders in the affected case file which were not final will be considered null and void and no longer subject to enforcement by this court." *Id.* We hold the provisions of the Administrative Order do not apply because this case was not dismissed due to the parties' failure to request a hearing within 365 days, and Son's emancipation did not render the June 18, 2019 order null and void. Rather, we believe the provisions of the Administrative Order exist as an incentive to parties to comply with its requirements. Accordingly, we decline to extend this rationale to the facts of this case.

Because we have concluded Son's emancipation did not render Father's contempt actions moot, we need not address Father's additional argument that exceptions to mootness applied. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (stating an appellate court need not address an appellant's remaining issues when the disposition of a prior issue is dispositive).

Based upon the foregoing, we reverse the family court's ruling finding Father's pending contempt actions were moot and remand for further proceedings.

## III. Registration and Enforcement of Foreign Order

Father argues the family court erred by declaring moot his request to register the Michigan contempt order that required Mother to provide him seventy-seven days of makeup visitation and reimburse him $5,500 for attorney's fees and airline tickets. Father argues Mother's obligation to reimburse Father should be enforceable through the family court's contempt powers rather than treated as a money judgment. We agree.

We hold the family court erred by failing to register the 2018 Michigan orders pursuant to the UCCJEA. *See* § 63-15-358(A) ("A child custody determination issued by a court of another state may be registered in this State, with or without a simultaneous request for enforcement . . . ."); *see also* S.C. Code Ann. § 63-15-302(3) (2010) ("'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual."); *cf.* S.C. Code Ann. § 15-35-910(1) (Supp. 2023) (excluding "'custody decree[s]', as defined in [s]ection 63-15-302 (the U[CCJEA])" from enforcement under the Uniform Enforcement of Foreign Judgments Act). In February 2019, more than a year prior to Son's emancipation, Father filed an application and affidavit seeking to register the 2018 Michigan orders as out-of-state child custody orders under section 63-15-358(A) of the UCCJEA. Because the 2018 Michigan orders involved visitation with respect to Son, the UCCJEA applied. *See* § 63-15-302(3) ("'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, *or visitation* with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual." (emphasis added)). Thus, we conclude the family court should have registered the orders under the UCCJEA and we reverse its dismissal of Father's request to register and enforce the 2018 Michigan orders.[10]

---

[10] We decline to address Father's remaining argument in which he asserts the family court should have registered the orders pursuant to the holding in *Johnson v. Johnson*, 196 S.C. 474, 13 S.E.2d 593 (1941). *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (stating an appellate court need not address an appellant's remaining issues when the disposition of a prior issue is dispositive).

**CONCLUSION**

For the foregoing reasons, we affirm the family court's dismissal of Father's counterclaims for attorney's fees in the underlying modification action. We reverse and remand as to Father's contempt actions and application to enroll and enforce the 2018 Michigan orders. The family court's order is therefore

**AFFRIMED IN PART, REVERSED IN PART, AND REMANDED.**

**GEATHERS and HEWITT, JJ., concur.**